UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EVERGREEN FARMS & PRODUCE, LLC, a Georgia limited liability company; BAGLEY PRODUCE COMPANY, INC., a Texas corporation; COAST TO COAST PRODUCE, LLC, a Connecticut limited liability company; DELIGHTFUL QUALITY PRODUCE COMPANY, LLC, an Arizona corporation; DELFINO MARKETING, INC., a Florida corporation; FRESH-PRO, INC., a Florida corporation, HAPCO FARMS, LLC, a New York limited liability company; HENDRIX PRODUCE, INC., a Georgia corporation; JIM RASH, INC., a Florida corporation; WARD THOMAS D/B/A MAJESTIC PRODUCE SALES CO., a Texas corporation; SANDIA DEPOT, INC., a Texas corporation; WILLIAM MANIS PRODUCE MARKETING (A D/B/A OF WILLIAM MANIS COMPANY), a Florida corporation; NEW ERA PRODUCE, LLC, a Missouri limited liability company; PURA VIDA FARMS, LLC, an Arizona limited liability company; WILLIAMS FARMS, LLC, a South Carolina limited liability company; CH ROBINSON WORLDWIDE, INC., a Delaware corporation; JIM RASH, INC., a Florida Corporation, and DEAN TUCKER FARMS PRODUCE, INC., a Georgia corporation,<br><br>        Plaintiffs and Intervenor Plaintiffs, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>1:15-CV-03171-AT<br><br>JUDGE AMY TOTENBERG |

|  | § |
| v. | § |
|  | § |
| ABL FARMS, INC., a Georgia | § |
| corporation; SOUTHERN MELON | § |
| DISTRIBUTORS, INC., a Georgia | § |
| corporation; BMO HARRIS BANK, | § |
| N.A., an Illinois corporation; BRANCH | § |
| BANKING AND TRUST COMPANY, | § |
| a Georgia corporation; RICHERT | § |
| FUNDING, LLC, a Florida limited | § |
| liability company; CUSTOM PAK | § |
| BROKERAGE, LLC, a Florida limited | § |
| liability company; AARON B. | § |
| LETSINGER, an individual; | § |
| JONATHAN D. LETSINGER, an | § |
| individual; PRIVATE KEY | § |
| VENTURES, LLC, a Georgia limited | § |
| liability company; GRS BROKERAGE, | § |
| LLC, a Florida limited liability | § |
| company; DWIGHT RICHERT, an | § |
| individual; BART GARBRECHT, an | § |
| individual; and, SIX L'S PACKING | § |
| COMPANY INC., | § |
|  | § |
| Defendants. | § |

## PACA TRUST CREDITOR PLAINTIFFS' CONSOLIDATED FOURTH AMENDED COMPLAINT

For their consolidated Fourth Amended Complaint ("Complaint"), the Plaintiffs and Intervenor Plaintiffs sue the Defendants and respectfully state as follows:

## THE PARTIES

1.     The Plaintiffs are:

a.      Evergreen Farms & Produce, LLC ("Evergreen") is a Georgia limited liability company with its principal place of business in Fitzgerald, Georgia and is duly licensed under the Perishable Agricultural Commodities Act ("PACA"), holding License No. 20150426.

b.      Coast to Coast Produce, LLC ("Coast to Coast") is a Connecticut limited liability company with its principal place of business in Cheshire, Connecticut.  Coast to Coast is duly licensed under the PACA, holding License No. 20030045.

c.      Delightful Quality Produce Company, LLC ("Delightful") is an Arizona limited liability company with its principal place of business in Mesa, Arizona.  Delightful is duly licensed under the PACA, holding License No. 20100149.

d.      Delfino Marketing, Inc. ("Delfino") is a Florida corporation with its principal place of business in Plant City, Florida.  Delfino is duly licensed under the PACA, holding License No. 19940559.

e.      Fresh-Pro, Inc. ("Freshpro") is a Florida corporation with its principal place of business in Altamonte Springs, Florida.  Freshpro is duly licensed under the PACA, holding License No. 20130323.

f.      Hapco Farms, LLC ("Hapco") is a New York limited liability company with its principal place of business in Riverhead, New York.  Hapco is duly licensed under the PACA, holding License No. 20010716.

g.      Hendrix Produce, Inc. ("Hendrix") is a Georgia limited liability company with its principal place of business in Metter, Georgia.  Hendrix is duly licensed under the PACA, holding License No. 19850955.

h.      Ward I. Thomas is an individual who conducts business as Majestic Produce Sales Produce Co. ("Majestic") and whose principal place of business is in McAllen, Texas.  Majestic is duly licensed under the PACA, holding License No. 19901853.

i.      Sandia Depot, Inc. ("Sandia") is a Texas company with its principal place of business located in Edinburg, Texas.  Sandia is duly licensed under the PACA, holding License No. 20021037.

j.      William Manis Produce Marketing (d/b/a of William Manis Company) ("Manis") is a Florida corporation with its principal place of business located in Plant City, Florida.  Manis is duly licensed under the PACA, holding License No. 19183690.

k.      New Era, LLC ("New Era") is a Missouri limited liability company with its principal place of business in Estero, Lee County, Florida. New Era is duly licensed under the PACA, holding License No. 20030139.

l.      Pura Vida Farms, LLC ("Pura Vida") is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona.  Pura Vida is duly licensed under the PACA, holding License No. 20080781.

m.      Williams Farms, LLC ("Williams") is a South Carolina limited liability company with its principal place of business in Islandton, South Carolina. Williams is duly licensed under PACA, holding License No. 20120518.

n.      C.H. Robinson Worldwide, Inc. ("CH Robinson") is a Delaware corporation with its principal place of business in Eden Prairie, Minnesota.  CH Robinson is duly licensed under PACA, holding License No. 19701419.

o.      Dean Tucker Farms Produce, Inc. ("Tucker") is a Georgia corporation with its principal place of business in Sumner, Georgia.  Tucker is duly licensed under PACA, holding License No. 20030692.

p.      Jim Rash, Inc. ("Jim Rash") is a Florida corporation with its principal place of business in Lake Wales, Florida, Jim Rash is duly licensed under PACA, holding License No. 19831341.

2.      The Plaintiffs are engaged in the business of growing, shipping, buying, and/or selling wholesale quantities of perishable agricultural commodities ("Produce") in interstate commerce.

3.      Defendants are:

a.      ABL Farms, Inc. ("ABL") is a Georgia corporation with its principal place of business in Atlanta, GA 30307.  ABL was a distributor and dealer of perishable agricultural commodities and operated its business under a valid PACA License identified as License No. 20110264.

b.      Southern Melon Distributors, Inc. ("Southern") is a Georgia company with its principal place of business in Atlanta, Georgia.  Southern was a distributor and dealer of perishable agricultural commodities and operated its business under a valid PACA License identified as License No. 20140573.  Both Southern and ABL operated out of the same office, 675 Seminole Avenue, Suite 103, Atlanta, Georgia 30307.   ABL and Southern are referred to collectively herein as (the "Companies")

c.      BMO Harris Bank, N.A. ("Harris Bank") is a national banking corporation with its principal place of business located in Chicago, Illinois.

d.      Branch Banking and Trust Company ("BB&T") is a corporation with its principal place of business located in Winston-Salem, North Carolina.

e.      Richert Funding, LLC ("Richert") is a Florida limited liability company with its principal place of business located in Orlando, Florida.  Dwight Richert owns and operates Richert as its director and/or officer. Bart Garbrecht is a corporate agent of Richert.  As is more fully alleged in this Complaint, Richert was involved in the day-to-day operations of the Companies.

f.      Custom Pak Brokerage, LLC ("Custom Pak") is a Florida limited liability company with its principal place of business located in Immokalee, Florida. Custom Pak is a distributor and dealer of perishable agricultural commodities and operates its business under a valid PACA License, identified as License No. 20110141.

g.      Aaron B. Letsinger ("Aaron"), is or was an officer, director, member, or shareholder of ABL and Southern, and in those capacities, controlled or was in a position to control the assets of the Companies, including the PACA Trust Assets of the Companies.  Aaron controlled the Companies' ability to pay Plaintiffs for the Companies' purchase of the Produce.  Upon information and belief, Aaron is a resident of Atlanta and a citizen of Georgia.

h.      Jonathan D. Letsinger a/k/a Danny Letsinger ("Danny") is or was an officer, director, and/or shareholder of ABL and Southern, and in those capacities, controlled or was in a position to control the assets of Southern, including the PACA Trust Assets of the Companies.  Danny controlled the Companies' ability to pay Plaintiffs for the Companies' purchase of the Produce.  Upon information and belief, Danny is a resident of Atlanta and a citizen of Georgia.  Danny and Aaron are sometimes referred to herein as "the Individual Defendants."

i.      Private Key Ventures, LLC ("Private") is a Georgia limited liability company based in Atlanta, Georgia.  Danny controls Private Key.

j.      GRS Brokerage, LLC ("GRS") is a Florida limited liability company with its principal place of business in Windermere, Florida.

k.      Dwight Richert ("Dwight") is an individual who was in position to control the assets of the Companies and directed the Companies to conduct actions that constituted a breach and/or caused them to breach their fiduciary duties to the Plaintiffs.  Dwight is also an owner and or officer of Richert and GRS.  Upon information and belief, Dwight is a resident and citizen of the State of Florida.

l.      Bart Garbrecht ("Bart") is an individual who was in a position to control the assets of the Companies and directed the Companies to conduct actions that constituted a breach and/or caused them to breach their fiduciary duties to the Plaintiffs.  Bart is also a corporate agent of Richert and GRS.  Upon information and belief, Bart is a resident and citizen of the State of Florida.

m.      Six L's Packing Company, Inc. ("Six L's") is a Florida corporation with its principal place of business located in Immokalee, Florida.  Six L's is a distributor and dealer of perishable agricultural commodities and operates its business under a valid PACA License, identified as No. 19151168. Six L's can be served through its counsel of record Larry Meuers who has previously made an appearance in this case on behalf of Custom Pak.

4.      At all times relevant hereto, Defendants ABL, Southern, Custom Pak, and Six L's were engaged in the business of purchasing and/or selling Produce in

wholesale or jobbing quantities and, therefore, are "dealers" of Produce as defined by the PACA.  At all times relevant hereto, the Companies bought on credit and sold wholesale quantities of Produce in interstate commerce.

## SUBJECT MATTER JURISDICTION AND VENUE

5.      This U.S. District Court has subject matter jurisdiction over this civil action arising under the PACA, 7 U.S.C. § 499e(c)(5), and pursuant to 28 U.S.C. § 1331.  The Court has and should exercise supplemental jurisdiction over Plaintiffs' other claims, pursuant to 28 U.S.C. § 1367(a).  The Court has *in rem* jurisdiction over the Plaintiffs' claims pursuant to, *inter alia*, 28 U.S.C. § 1655 and also has *in rem* jurisdiction over the assets of the Companies which constitute the PACA statutory trust of ABL and Southern.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and a substantial part of the property that is the subject of this action is in this District.

## PERSONAL JURISDICTION OVER THE NONRESIDENT DEFENDANTS

7.      This Court has personal jurisdiction over the Defendants Richert, GRS, Dwight, and Bart pursuant to the Georgia Long-Arm Statute, O.C.G.A. 9-10-91 (2010) because they, in person and/or through one or more agent(s):  (1) transacted any business within this state; (2) committed a tortious act or omission within this

state, …; and/or (3) committed a tortious injury in this state caused by an act or omission outside this state and the Defendants regularly transact or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in Georgia.

## GENERAL FACTUAL ALLEGATIONS

8.     Plaintiffs reallege paragraphs 1 through 7, as though fully set forth herein.

9.     At all times relevant to this action, ABL and Southern were commission merchants, dealers, and/or brokers subject to the PACA.

10.    Plaintiffs sold and invoiced to ABL and Southern in interstate commerce, and ABL and Southern purchased on credit from Plaintiffs, wholesale quantities of produce, with the following principal due and outstanding, after applying applicable agreed set-offs owed to ABL and withdrawn claim amounts:

| Claimant | Delivery/Sales Date | Amount Due |
|---|---|---|
| Evergreen Farms | June 4, 2015 – August 2, 2015 | $124,990.80 |
| Hendrix Produce | June 19, 2015 – July 1, 2015 | $75,663.00 |
| Coast to Coast Produce | July 27, 2015 – August 7, 2015 | $107,363.00 |
| Delightful Quality Produce | April 8, 2015 – May 5, 2015 | $194,925.33 |
| Fresh-Pro, Inc. | August 6-9, 2015 | $20,048.00 |

| Jim Rash, Inc. | April 24, 2015 – August 31, 2015 | $96,065.29 |
| Hapco Farms, LLC | July 14, 2015 – October 9, 2015 | $564,300.58 |
| Ward Thomas | August 14, 2015 – August 25, 2015 | $102,320.90 |
| Sandia Depot, Inc. | August 24, 2015 – September 5, 2015 | $84,949.40 |
| William Manis Company | May 19, 2015 – June 11, 2015 | $99,137.00 |
| Delfino Marketing | August 13, 2015 | $4,234.00 |
| Williams Farms | June 12, 2015 – September 8, 2015 | $479,093.00 |
| CH Robinson | June 26, 2015 – August 14, 2015 | $142,150.50 |
| Dean Tucker Farms | June 16, 2015 – August 14, 2015 | $7,358.00 |
| Pura Vida | May 12, 2015 – August 31, 2015 | $523,981.26 |
| New Era | April 2015 – August 2015 | $384,257.34 |
| **TOTAL**: | | **$3,010,837.40** |

11.    Plaintiffs delivered the Produce to ABL and/or Southern, and ABL and/or Southern accepted the Produce from Plaintiffs.

12.    Pursuant to the trust provisions of the PACA, 7 U.S.C. § 499e(c), at the time of ABL's and Southern's receipt of the Produce, ABL and Southern were trustees of the PACA trust for the benefit of Plaintiffs, as the beneficiaries of the PACA Trust, in the amount of not less than $3,010,837.40.  As a matter of law, including pursuant to 7 C.F.R. §46.46(b), the PACA trust consists of all ABL's and Southern's inventories of Produce, food, or products derived from produce, accounts

receivable and other proceeds of the sale of Produce, and assets commingled, purchased, or otherwise acquired with proceeds from the sale of such Produce (all of the foregoing assets subject to the PACA trust are hereinafter referred to as "PACA Trust Assets"). Also, pursuant to the same PACA regulation, trust assets are to be preserved as a nonsegregated "floating" trust and commingling of trust assets is contemplated.

13.     Plaintiffs gave written notice of intent to preserve trust benefits to ABL and Southern in accordance with the PACA by including the statutory trust language set forth in 7 U.S.C. § 499e(c)(4) on each of their invoices and by sending those invoices to ABL and Southern.[1]

14.     ABL and Southern failed to pay Plaintiffs for the Produce despite Plaintiffs' repeated demands.  The Companies are now out of business and, because of the dissipation and/or conversion of the PACA Trust Assets, there are insufficient

---

[1] Invoices for Evergreen Farms, Hendrix Produce, Coast to Coast Produce, Delightful Quality Produce, Fresh-Pro, Inc., Hapco Farms, LLC, Ward Thomas, Sandia Depot, Inc., William Manis Company and Delfino Marketing are attached to the Corrected Second Amended Complaint [DE 57] Exhibits A, B, D, E, F, G, H, I, J and K respectfully.  The invoices from Williams Farms, CH Robinson and Dean Tucker Farms are attached to their Proofs of Claim [DE 88-1], [DE 91] and [DE 90] respectfully.  The invoices from Pura Vida are attached to its Proof of Claim as Exhibit A [DE 105-1].  The invoices for New Era are attached to its Proof of Claim as Exhibit B [DE 81-2]. Plaintiffs hereby reincorporate those invoices in this Complaint by reference and request the Court to take judicial notice thereof.

assets and funds from which Plaintiffs can collect the amounts owed to them as specified in Paragraph 11.

15.    Pursuant to the PACA, 7 U.S.C. § 499e(c), Plaintiffs are unpaid suppliers and sellers of Produce, and are entitled to PACA trust protection and payment from ABL's and Southern's PACA Trust Assets.

16.    Plaintiffs seek entry of an Order and/or Judgment declaring that they are valid PACA trust beneficiaries of ABL and Southern with valid PACA trust claims in the amount of $3,010,837.40, plus interest from the date each invoice became past due, an award of costs, and, pursuant to contract, an award of attorney's fees.

17.    Southern and ABL share common ownership and acted as alter egos of each other in that suppliers of ABL were paid with funds of Southern. Produce purchased by ABL was received by Southern, and assets including Produce were freely pooled between and commingled among the Companies. Suppliers who received purchase orders from ABL were, from time to time, directed to bill Southern.  Southern and ABL operated from a common office.  The interchange of assets and funds between ABL and Southern were such that the shareholders of each disregarded the respective corporate entities and made each entity a mere instrumentality for the transaction of the affairs of the other entity.  There is such unity of interest, ownership, and control that the separate personalities of each

corporation and the owners no longer exist at least with respect to the assets of each which are subject to the PACA statutory trust.  Moreover, ABL's and Southern's commingling of assets and payments resulted in the commingling of their respective PACA Trust Assets into a single PACA trust *res* which is for the benefit of all qualified PACA trust creditors of ABL and Southern, including Plaintiffs.

18.     At all relevant times hereto, ABL acted by and through its principals, Aaron and Danny.  Although only Aaron is listed as the responsible person for ABL on its PACA license according to the website of the PACA branch of the U.S. Department of Agriculture, Danny managed ABL's sales, purchase of Produce, and marketing of Produce, and signed checks on behalf of ABL; he is therefore, a controlling person of ABL.

19.     At all relevant times hereto, Southern acted by and through its principal, Danny.  Danny managed the sales and marketing of Produce of Southern and signed checks on behalf of Southern and therefore, is a controlling person of Southern.

20.     Harris Bank was a lender to ABL and holds an alleged security interest in the accounts receivable of ABL.

21.     BB&T was a lender to Southern and holds an alleged security interest in the accounts receivable of Southern.

22.     Richert was a lender to the Companies.

23.    Custom Pak was a supplier to, customer of and lender to the Companies.

24.    Six L's was a lender to the Companies.

25.    GRS is a trucking company currently wholly owned and operated by Dwight.  During a portion of the times relevant to the facts in this Complaint, Danny was a co-owner of GRS. Danny used the Companies' PACA Trust Assets to fund his purchase of ownership shares in GRS.  Dwight, Richert, and Garbrecht directed Danny to use PACA Trust Assets to pay GRS for its services provided, instead of paying the Plaintiffs, as sellers of Produce to the Companies.

26.    Dwight, Bart, and Richert, through both Dwight and Bart, exercised control of the funds constituting the *res* of the PACA trust of the Companies. As a matter of law under the PACA, the Companies were required not to dissipate the PACA trust assets and to, at all times, maintain funds freely available to pay the Companies' PACA trust creditors. Dwight, Bart, and Richert knew that the Companies were dissipating PACA Trust assets, including by making payments to Richert and GRS, rather than timely paying the Companies' PACA Trust Assets to the beneficiaries of the PACA trust, including the Plaintiffs. Dwight, Bart, and Richert not only knew of the breach of fiduciary duties under the PACA being committed by Danny, Aaron, and the Companies but indeed, exercised actual control and authority over the assets, funds, and finances of the Companies as well as over

Danny such that the Companies used PACA Trust Assets to pay Richert and GRS. Dwight, Bart, and Richert enforced their direction and control of and over the Companies by, among other things, withholding advances of Richert funds that the Companies required to continue their operations.   Dwight considered himself Danny's partner in the Companies, and vice versa.

27.    Bart, as a corporate agent for Richert and GRS and, following the direction of Dwight, directed the day-to-day use by the Companies of its funds and directed the Companies to pay PACA Trust Assets to GRS and Richert instead of paying the beneficiaries of the PACA Trust, including the Plaintiffs, for purchases of the Produce, all in breach of the PACA trust.

28.    All conditions precedent have been performed or have occurred.

29.    To the extent Georgia, rather than Florida, substantive law applies, Plaintiffs hereby notifies ABL, Southern, the Individual Defendants, as well as the other Defendants, that pursuant to O.C.G.A. § 13-1-11, Defendants have ten (10) days from the date of service of this Complaint within which to pay all of the unpaid principal and accrued interest due under Plaintiffs' invoices for the sale of the perishable produce set forth in Paragraph 11 in order to avoid paying Plaintiffs' reasonable attorneys' fees. If Defendants pay all of such unpaid principal and accrued interest due within such ten (10) day period, Defendants' obligation under Plaintiffs' invoices to pay Plaintiffs' reasonable attorneys' fees will not be enforced.

If Defendants fail to make the required payment within such ten (10) day period, Plaintiffs shall collect in addition to the principal and accrued interest, reasonable attorneys' fees as provided in O.C.G.A. § 13-1-11. Notice is hereby given that under Georgia law, the obligation to pay attorneys' fees, as set forth in Plaintiffs' invoices, means fifteen percent (15%) of the first $500.00 of principal and accrued interest owing and ten percent (10%) of the principal and accrued interest owing in excess of $500.00.

## COUNT I
## ENFORCEMENT OF THE PACA TRUST
## AGAINST ABL, SOUTHERN, AARON, DANNY, DWIGHT, RICHERT, AND BART

30.    Plaintiffs reallege Paragraphs 1 through 29 as though fully set forth herein.

31.    Defendants ABL, Southern, Danny, Aaron, Dwight, Richert, and Bart are in possession, custody and control of PACA Trust Assets derived from the Defendants' sale of: (i) the Produce; (ii) Food or Products derived from Produce; (iii) accounts receivable; (iv) proceeds from the sale of Produce; (v) cash; (vi) any other assets commingled with proceeds of Produce; and (vii) any other assets acquired or maintained with such proceeds, cash, assets, or other trust assets held in the Companies' names for the benefit of Plaintiffs.

32.    Defendants ABL, Southern, Danny, Aaron, Dwight, Richert, and Bart failed to make prompt payment in full to Plaintiffs from the PACA Trust Assets of

ABL and Southern for any of the shipments of Produce listed in and thereby violated the PACA, 7 U.S.C. §§ 499b(4) and 499e(c), and the PACA regulations, 7 C.F.R. §§ 46.46(e)(1), 46.2(z) & (aa).

33.    Defendants ABL, Southern, Danny, and Aaron, as well as Dwight, Richert, and Bart, who were controlling the Companies' PACA Trust Assets, failed to preserve sufficient amounts of the PACA Trust Assets freely available to fully satisfy all qualified PACA trust claims, such as Plaintiffs' unpaid claims asserted in this action.  Such misconduct constitutes dissipation of the PACA trust assets of Southern and ABL in violation of 7 U.S.C. § 499e(c) of PACA and 7 C.F.R. § 46.46(a)(2) and (d)(2) of the PACA regulations, as well as unlawful conversion in violation of 7 C.F.R. § 46.33.

34.    The matters and actions alleged in this Count I constitute a violation by the Defendants of the PACA, 7 U.S.C. § 499b(4) and § 499e(c), and the PACA regulations, 7 C.F.R. § 46.46.

35.    As a direct result, the Defendants' are jointly and severally liable for the failure to properly protect the PACA Trust Assets from dissipation and conversion, Plaintiffs have suffered damages in the current principal amount of $3,010,837.40, which compensatory damages are a claim against the PACA Trust Assets, plus Plaintiffs are entitled to recovery of interest on the unpaid amounts on

the sale of the Produce, and contractually due costs of collection, including attorneys'
fees, incurred in this action.

## COUNT II
## PACA VIOLATION: FAILURE TO MAKE FULL PAYMENT PROMPTLY
## AGAINST ABL AND SOUTHERN

36.    Plaintiffs reallege Paragraphs 1 through 35 as though fully set forth
herein.

37.    Defendants ABL and Southern received each of the shipments of
Produce referenced in Paragraph 11 above.

38.    Defendants ABL and Southern failed to pay these invoices in full and
within the applicable payment terms that were agreed to between the parties at the
time of each transaction.

39.    The matters alleged in this Count II constitute a violation by Defendants
ABL and Southern of the prompt payment in full provisions of Section 2 of the
PACA, 7 U.S.C. § 499b(4).

40.    As a direct result, the Defendants are jointly and severally liable for
ABL's and Southern's failure to promptly pay in full for each invoice within the
terms agreed to by the parties; and the Plaintiffs have incurred compensatory
damages of $3,010,837.40, plus pre-judgment interest, costs, and attorney's fees as
provided by contract.

## COUNT III
## BREACH OF SALES CONTRACT
## AGAINST ABL AND SOUTHERN

41.    Plaintiffs reallege Paragraphs 1 through 40 as though fully set forth herein.

42.    Plaintiffs and ABL and Southern entered into the various contracts referenced in Paragraph 11 above.

43.    In each contract, Plaintiffs agreed to sell the Produce to ABL or Southern and ABL or Southern, respectively, agreed to purchase the Produce from the Plaintiffs at the agreed prices.

44.    Plaintiffs delivered conforming goods in the form of the Produce to ABL and/or Southern and have otherwise satisfied all conditions and terms of their performance of the contracts. ABL and Southern accepted the Produce.

45.    ABL and Southern failed to pay for the Produce referenced in Paragraph 11 above.

46.    As a direct result of ABL's and Southern's failure to pay for the Produce, Plaintiffs have incurred compensatory damages of $3,010,837.40 plus pre-judgment interest, and contractually-due costs of collection, including attorneys' fees, incurred in bringing and prosecuting this action for which the Defendants are jointly and severally liable.

## COUNT IV
## NEGLIGENT BREACH OF PACA FIDUCIARY DUTY
## AGAINST AARON

47.     Plaintiffs reallege Paragraphs 1 through 46 as though fully set forth herein.

48.     At all times relevant to this action, Aaron was an officer, director, member, and/or shareholder of ABL's and Southern, and an individual in charge of its business undertakings and in a position to control the assets of the companies.

49.     At all times relevant to this action, Aaron was engaged in the business of buying and/or selling Produce in interstate or foreign commerce in wholesale or jobbing quantities.

50.     At all times relevant to this action, Aaron controlled and managed ABL's and Southern's operations and was in a position to control ABL's and Southern's financial dealings, including those involving the PACA Trust Assets.

51.     At all times relevant to this action, Aaron had the authority to direct the payment of ABL's and Southern's operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

52.     At all times relevant to this action, Aaron was an authorized signatory on ABL's and Southern's bank account(s) and otherwise had the power to and was in a position to direct the application or disposition of the PACA Trust Assets, including the funds in the Companies' bank accounts.

53.     As an officer, director, member, and/or shareholder of ABL and Southern, Aaron was and is a PACA statutory trustee with a duty to safeguard the PACA Trust Assets of the Companies for the benefit of all sellers of the Produce to ABL and Southern and was required to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as those owed to Plaintiffs.

54.     As an officer, director, member, and/or shareholder of ABL and Southern, Aaron was and is a PACA statutory trustee with a duty to ensure that ABL and Southern performed all duties, express or implied, arising out of ABL's and Southern's undertakings in connection with the Produce transactions with Plaintiffs, which undertakings included the duty to ensure that there were, at all times, sufficient trust assets available to satisfy all of ABL's and Southern's obligations to its unpaid Produce suppliers.

55.     As officer, director, member, and/or shareholder of ABL and Southern, Aaron knew or should have known of ABL's and Southern's failure to timely pay in full Plaintiffs' unpaid invoices identified in Paragraph 11.

56.     As officer, director, member, and/or shareholder of ABL and Southern, Aaron was in a position to control the PACA Trust Assets and possessed the power necessary to counteract or obviate the decisions of ABL and Southern, including

Danny, not to pay Plaintiffs and to otherwise convert and dissipate the PACA Trust Assets.

57.     Because Aaron controlled and/or was in a position to control ABL and Southern, and Plaintiffs' invoices have not been paid in full and promptly from PACA Trust Assets, Aaron negligently breached his fiduciary duties under the PACA trust.

58.     Aaron continues to hold any and all PACA Trust Assets within his possession, custody, or control as trustee for Plaintiffs' beneficial interest in the PACA trust.

59.     Aaron is joint and severally and personally liable to Plaintiffs, which liability is non-dischargeable in bankruptcy, for the dissipation and/or conversion of the PACA Trust Assets which has directly, proximately, and as a natural result, caused Plaintiffs to suffer compensatory damages of $3,010,837.40 plus pre-judgment further interest, costs, and attorney's fees allowed by contract, to be satisfied from Aaron's personal assets.

## COUNT V
## INTENTIONAL BREACH OF PACA FIDUCIARY DUTY
## AGAINST DANNY

60.     Plaintiffs reallege Paragraphs 1 through 59 as though fully set forth herein.

61.    At all times relevant to this action, Danny was an officer, director, member, and/or shareholder of ABL and Southern, and an individual in charge of its business undertakings and in a position to control the PACA Trust Assets of the companies.

62.    At all times relevant to this action, Danny was engaged in the business of buying and/or selling Produce in interstate or foreign commerce in wholesale or jobbing quantities.

63.    At all times relevant to this action, Danny controlled and managed ABL and Southern's operations and was in a position to control ABL's and Southern's financial dealings, including those involving the PACA Trust Assets.

64.    At all times relevant to this action, Danny had the authority to direct the payment of ABL's and Southern's operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

65.    At all times relevant to this action, Danny was an authorized signatory on ABL's and Southern's bank account(s) and otherwise had the power to and was in a position to direct the application or disposition of the PACA Trust Assets, including the funds in the Companies' bank accounts.

66.    As an officer, director, member, and/or shareholder of ABL and Southern, Danny was and is a PACA statutory trustee with a duty to safeguard the PACA Trust Assets of the Companies for the benefit of all sellers of the Produce to

ABL and Southern and was required to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as those owed to Plaintiffs.

67.    As an officer, director, member, and/or shareholder of ABL and Southern, Danny was and is a PACA statutory trustee with a duty to ensure that ABL and Southern performed all duties, express or implied, arising out of ABL's and Southern's undertakings in connection with the Produce transactions with Plaintiffs, which undertakings included the duty to ensure that there were, at all times, sufficient trust assets available to satisfy all of ABL's and Southern's obligations to its unpaid Produce suppliers.

68.    As an officer, director, member, and/or shareholder of ABL and Southern, Danny knew of ABL's and Southern's failure to timely pay in full Plaintiffs' unpaid invoices identified in Paragraph 11.

69.    As an officer, director, member, and/or shareholder of ABL and Southern, Danny was in a position to control the PACA Trust Assets and possessed the power necessary to counteract or obviate the decisions of ABL and Southern, including Aaron, not to pay Plaintiffs and to otherwise convert and dissipate the PACA Trust Assets.

70.    Because Danny controlled and/or was in a position to control ABL and Southern, and Plaintiffs' invoices have not been paid in full and promptly from

PACA Trust Assets, Danny intentionally breached his fiduciary duties under the PACA trust.

71.    Danny continues to hold any and all PACA Trust Assets within his possession, custody, or control as trustee for Plaintiffs' beneficial interest in the PACA trust.

72.    Danny is personally liable to Plaintiffs, which liability is joint and several and non-dischargeable in bankruptcy, for the dissipation and/or conversion of the PACA Trust Assets; and which misconduct has directly, proximately, and as a natural result, caused Plaintiffs to suffer compensatory damages of $3,010,837.40 plus pre-judgment interest, costs, and attorney's fees allowed by contract, all to be satisfied from Danny's personal assets.

73.    The transfer, dissipation, and/or or conversion of the PACA Trust Assets by Danny, was done with the knowledge that Plaintiffs remained unpaid, with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets, and was willful misconduct made with malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences made.

74.    As a direct and proximate result of Danny's willful transfer and receipt of the PACA Trust Assets, willful misconduct made with malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of

conscious indifference to consequences made -- all done with the intent to harm Plaintiffs by depriving them of the PACA trust assets – justifies an award of punitive damages against Danny.

## COUNT VI
## NEGLIGENT BREACH OF PACA FIDUCIARY DUTY
## AGAINST DANNY

75.     Plaintiffs reallege Paragraphs 1 through 74 as though fully set forth herein.

76.     At all times relevant to this action, Danny was an officer, director, member, and/or shareholder of ABL and Southern, and an individual in charge of its business undertakings and in a position to control the PACA Trust Assets of the Companies.

77.     At all times relevant to this action, Danny was engaged in the business of buying and/or selling Produce in interstate or foreign commerce in wholesale or jobbing quantities.

78.     At all times relevant to this action, Danny controlled and managed ABL and Southern's operations and was in a position to control ABL's and Southern's financial dealings, including those involving the PACA Trust Assets.

79.     At all times relevant to this action, Danny had the authority to direct the payment of ABL and Southern's operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

80.     At all times relevant to this action, Danny was an authorized signatory on ABL's and Southern's bank account(s) and otherwise had the power to and was in a position to direct the application or disposition of the PACA Trust Assets, including the funds in the Companies' bank accounts.

81.     As an officer, director, member, and/or shareholder of ABL and Southern, Danny was and is a PACA statutory trustee with a duty to safeguard the PACA Trust Assets of the Companies for the benefit of all sellers of the Produce to ABL and Southern and was required to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as those owed to Plaintiffs.

82.     As an officer, director, member, and/or shareholder of ABL and Southern, Danny was and is a PACA statutory trustee with a duty to ensure that ABL and Southern performed all duties, express or implied, arising out of ABL's and Southern's undertakings in connection with the Produce transactions with Plaintiffs, which undertakings included the duty to ensure that there were, at all times, sufficient trust assets available to satisfy all of ABL's and Southern's obligations to its unpaid Produce suppliers.

83.     As officer, director, member, and/or shareholder of ABL and Southern, Danny knew or should have known of ABL's and Southern's failure to timely pay in full Plaintiffs' unpaid invoices identified in Paragraph 11.

84.     As officer, director, member, and/or shareholder of ABL and Southern, Danny was in a position to control the PACA Trust Assets and possessed the power necessary to counteract or obviate the decisions of ABL and Southern, including Aaron, not to pay Plaintiffs and to otherwise convert and dissipate the PACA Trust Assets.

85.     Because Danny controlled and/or was in a position to control ABL and Southern, and Plaintiffs' invoices have not been paid in full and promptly from PACA Trust Assets, Danny negligently breached his fiduciary duties under the PACA trust.

86.     Danny continues to hold any and all PACA Trust Assets within his possession, custody, or control as trustee for Plaintiffs' beneficial interest in the PACA trust.

87.     Danny is personally liable to Plaintiffs, which liability is joint and several and non-dischargeable in bankruptcy, for the dissipation and/or conversion of the PACA trust assets and which has directly, proximately, and as a natural result, caused Plaintiffs to suffer compensatory damages of $3,010,837.40 plus pre-judgment interest, costs, and attorney's fees allowed by contract, all to be satisfied from Danny's personal assets.

## COUNT VII
## INTENTIONAL BREACH OF PACA FIDUCIARY DUTY
## AGAINST DWIGHT

88.     Plaintiffs reallege Paragraphs 1 through 87, as though fully set forth herein.

89.     At all times relevant to this action, Dwight was in a position to control and exercised actual control of and over the Companies' day-to-day financial dealings and operating funds, including the use of the PACA Trust Assets.

90.     At all times relevant to this action, Dwight exercised his power by directing the payment of the Companies' PACA Trust Assets to Richert and GRS, and not to pay promptly and in full for the Produce purchased by the Companies from Plaintiffs.

91.     As a person with the power of control over the Companies and the Companies' management, Dwight was and is a co-trustee of the PACA trust with duties to safeguard the PACA Trust Assets of the Companies and not convert or dissipate those Assets, including the duty to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient funds freely available satisfy all outstanding PACA trust obligations such as those owed to Plaintiffs.

92.     As a person with the power to control and actual control of and over the PACA Trust Assets of ABL and Southern, Dwight was and is a PACA trustee with a duty to ensure that ABL and Southern performed all duties, express or implied,

arising out of ABL's and Southern's undertakings regarding ABL's and Southern's Produce transactions with Plaintiffs.

93.    As a person in a position to control and exercising actual control over the PACA Trust Assets of ABL and Southern, Dwight knew of ABL's and Southern's failure to pay promptly and in full the Plaintiffs' unpaid invoices identified in Paragraph 11 as they became due.

94.    As a person in control of the PACA Trust Assets of ABL and Southern and in a position to control the disposition of those Assets, Dwight possessed the power necessary to counteract and obviate the decisions of Bart, Danny, and Aaron as well as Southern and/or ABL not to pay Plaintiffs and to instead convert and dissipate the PACA Trust Assets by having the Companies make payments to GRS and Richert.

95.    Because Dwight controlled and/or was in a position to control ABL and Southern, and the Plaintiffs' invoices have not been promptly paid in full from the PACA Trust Assets of the Companies, Dwight has intentionally breached his fiduciary duties as a PACA co-trustee under the PACA trust.

96.    Because Dwight controlled and/or was in a position to control ABL and Southern, and he failed to ensure that there were, at all times, sufficient trust assets freely available to satisfy all of ABL and Southern's obligations to Plaintiffs as

unpaid Produce suppliers, Dwight breached his fiduciary duties under the PACA trust.

97.    Dwight continues to hold any and all PACA Trust Assets having come into his possession, custody, or control, including all receipt of funds from Richert, as a co-trustee of the PACA Trust Assets of the Companies for the benefit of Plaintiffs.

98.    Dwight is personally liable to Plaintiffs, jointly and severally, for the dissipation and/or conversion of the PACA Trust Assets of the Companies, which intentional breaches of fiduciary duty were the direct, proximate, and natural cause of Plaintiffs having incurred compensatory damages of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees allowed by contract, all to be satisfied from Dwight's personal assets.

99.    The transfer, dissipation, and/or or conversion of the PACA Trust Assets by Dwight, was done with the knowledge that Plaintiffs remained unpaid, with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets, and was willful misconduct made with malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences made.

100.    As a direct and proximate result of Dwight's willful transfer and receipt of PACA Trust Assets, willful misconduct made with malice, fraud, wantonness,

oppression or that entire want of care which would raise the presumption of conscious indifference to consequences made -- all done with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets – justifies an award of punitive damages against Dwight.

## COUNT VIII
## NEGLIGENT BREACH OF PACA FIDUCIARY DUTY
## AGAINST DWIGHT

101.   Plaintiffs reallege Paragraphs 1 through 46 and 88 through 100 as though fully set forth herein.

102.   At all times relevant to this action, Dwight was in a position to control and exercised actual control of and over the Companies' financial dealings and operating funds, including the use of the PACA Trust Assets.

103.   At all times relevant to this action, Dwight exercised his power by directing the payment of the Companies' PACA trust assets to Richert and GRS, and not to pay promptly and in full for the Produce purchased by the Companies from Plaintiffs.

104.   As a person with the power of control over the Companies and the Companies' management, Dwight was and is a co-trustee of the PACA trust with duties to safeguard the PACA Trust Assets of the Companies and not convert or dissipate those Assets, including the duty to maintain the trust assets in such a

manner as to ensure there were, at all times, sufficient funds freely available satisfy all outstanding PACA trust obligations such as those owed to Plaintiffs.

105.   As a person with the power to control and actual control of and over the PACA Trust Assets of ABL and Southern, Dwight was and is a PACA trustee with a duty to ensure that ABL and Southern performed all duties, express or implied, arising out of ABL's and Southern's undertakings in connection with ABL's and Southern's Produce transactions with Plaintiffs.

106.   As a person in a position to control and exercising actual control over the PACA Trust Assets of ABL and Southern, Dwight knew or should have known of ABL's and Southern's failure to pay promptly and in full Plaintiffs' unpaid invoices identified in Paragraph 11 as they fell due.

107.   As a person in control of the PACA Trust Assets of ABL and Southern and in a position to control the disposition of those Assets, Dwight possessed the power necessary to counteract and obviate the decisions of Bart, Danny, and Aaron as well as Southern and/or ABL not to pay Plaintiffs and to convert and dissipate the PACA Trust Assets, including by making payments to GRS and Richert.

108.   Because Dwight controlled and/or was in a position to control ABL and Southern, and the Plaintiffs' invoices have not been promptly paid in full from the PACA Trust Assets of the Companies, Dwight has intentionally breached his fiduciary duties as a PACA co-trustee under the PACA trust.

109.   Because Dwight controlled and/or was in a position to control ABL and Southern, and he failed to ensure that there were, at all times, sufficient trust assets freely available to satisfy all of ABL's and Southern's obligations to Plaintiffs as unpaid Produce suppliers, Dwight negligently breached his fiduciary duties under the PACA trust.

110.   Dwight continues to hold any and all PACA Trust Assets having come into his possession, custody, or control, including all receipt of funds from Richert, as a co-trustee of the PACA Trust Assets of the Companies for the benefit of Plaintiffs.

111.   Dwight is personally liable to Plaintiffs, jointly and severally, for the dissipation and/or conversion of the PACA Trust Assets of the Companies, which negligent breaches of fiduciary duty were the direct, proximate, and natural cause of Plaintiffs having suffered compensatory damages of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees allowed by contract, all to be satisfied from Dwight's personal assets.

## COUNT IX
## INTENTIONAL BREACH OF PACA FIDUCIARY DUTY
## AGAINST BART

112.   Plaintiffs reallege Paragraphs 1 through 111 as though fully set forth herein.

113.   At all times relevant to this action, Bart was in a position to control and exercised actual control of and over the Companies' financial dealings and operating funds, including the use of the PACA Trust Assets.

114.   At all times relevant to this action, Bart exercised his power by directing the payment of the Companies' PACA Trust Assets to Richert and GRS, and not to pay promptly and in full for the Produce purchased by the Companies from Plaintiffs.

115.   As a person with the power of control over the Companies and the Companies' management, Bart was and is a co-trustee of the PACA trust with duties to safeguard the PACA Trust Assets of the Companies and not convert or dissipate those Assets, including the duty to maintain the PACA Trust Assets in such a manner as to ensure there were, at all times, sufficient funds freely available satisfy all outstanding PACA trust obligations such as those owed to Plaintiffs.

116.   As a person with the power to control and actual control of and over the PACA Trust Assets of ABL and Southern, Bart was a PACA co-trustee with a duty to ensure that ABL and Southern performed all duties, express or implied, arising out of ABL's and Southern's undertakings in connection with ABL's and Southern's Produce transactions with Plaintiffs.

117.   As a person in a position to control and exercising actual control over the PACA Trust Assets of ABL and Southern, Bart knew of ABL's and Southern's

failure to pay promptly and in full Plaintiffs' unpaid invoices identified in Paragraph 11 as they fell due.

118.   As a person in control of the PACA Trust Assets of ABL and Southern and in a position to control the disposition of those Assets, Bart possessed the power necessary to counteract and obviate the decisions of Danny and Aaron as well as Southern and/or ABL not to pay Plaintiffs and to instead, convert and dissipate the PACA Trust Assets, including by making payments to GRS and Richert.

119.   Because Bart controlled and/or was in a position to control ABL and Southern, and the Plaintiffs' invoices have not been promptly paid in full from the PACA Trust Assets of the Companies, Bart has intentionally breached his fiduciary duties as a PACA co-trustee under the PACA trust.

120.   Because Bart controlled and/or was in a position to control ABL and Southern, and he failed to ensure that there were, at all times, sufficient PACA Trust Assets freely available to satisfy all of ABL and Southern's obligations to Plaintiffs as unpaid Produce suppliers, Bart breached his fiduciary duties under the PACA trust.

121.   Bart continues to hold any and all PACA Trust Assets having come into his possession, custody, or control, including all receipt of funds from Richert, as a co-trustee of the PACA Trust Assets of the Companies for the benefit of Plaintiffs.

122.   Bart is personally liable to Plaintiffs, jointly and severally, for the dissipation and/or conversion of the PACA Trust Assets of the Companies, which intentional breaches of fiduciary duty were the direct, proximate, and natural cause of Plaintiffs having suffered compensatory damages of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees allowed by contract, all to be satisfied from Bart's personal assets.

123.   The transfer, dissipation, and/or or conversion of the PACA Trust Assets by Bart, was done with the knowledge that Plaintiffs remained unpaid, with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets, and was willful misconduct made with malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences made.

124.   As a direct and proximate result of Bart's willful transfer and receipt of PACA Trust Assets, willful misconduct made with malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequences made -- all done with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets – justifies an award of punitive damages against Bart.

 ///

 ///

**COUNT X**
**NEGLIGENT BREACH OF PACA FIDUCIARY DUTY**
**AGAINST BART**

125.    Plaintiffs reallege Paragraphs 1 through 46 and 112 through 124 as though fully set forth herein.

126.    At all times relevant to this action, Bart was in a position to control and exercised actual control of and over the Companies' financial dealings and operating funds, including the use of the PACA Trust Assets.

127.    At all times relevant to this action, Bart exercised his power by directing the payment of the Companies' PACA trust assets to Richert and GRS, and not to pay promptly and in full for the Produce purchased by the Companies from Plaintiffs.

128.    As a person with the power of control over the Companies and the Companies' management, Bart was and is a co-trustee of the PACA trust with duties to safeguard the PACA Trust Assets of the Companies and not convert or dissipate those Assets, including the duty to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient funds freely available satisfy all outstanding PACA trust obligations such as those owed to Plaintiffs.

129.    As a person with the power to control and actual control of and over the PACA Trust Assets of ABL and Southern, Bart was a PACA co-trustee with a duty to ensure that ABL and Southern performed all duties, express or implied, arising

out of ABL's and Southern's undertakings in connection with ABL's and Southern's Produce transactions with Plaintiffs.

130.   As a person in a position to control and exercising actual control over the PACA Trust Assets of ABL and Southern, Bart knew or should have known of ABL's and Southern's failure to pay promptly and in full Plaintiffs' unpaid invoices identified in Paragraph 11 as they fell due.

131.   As a person in control of the PACA Trust Assets of ABL and Southern and in a position to control the disposition of those Assets, Bart possessed the power necessary to counteract and obviate the decisions of Danny and Aaron as well as Southern and/or ABL not to pay Plaintiffs and to instead convert and dissipate the PACA Trust Assets, including by making payments to GRS and Richert.

132.   Because Bart controlled and/or was in a position to control ABL and Southern, and the Plaintiffs' invoices have not been promptly paid in full from the PACA Trust Assets of the Companies, Bart has negligently breached his fiduciary duties as a PACA co-trustee under the PACA trust.

133.   Because Bart controlled and/or was in a position to control ABL and Southern, and he failed to ensure that there were, at all times, sufficient trust assets freely available to satisfy all of ABL and Southern's obligations to Plaintiffs as unpaid Produce suppliers, Bart negligently breached his fiduciary duties under the PACA trust.

134.   Bart continues to hold any and all PACA Trust Assets having come into his possession, custody, or control, including all receipt of funds from Richert, as a co-trustee of the PACA Trust Assets of the Companies for the benefit of Plaintiffs.

135.   Bart is personally liable to Plaintiffs, jointly and severally, for the dissipation and/or conversion of the PACA Trust Assets of the Companies, which negligent breaches of fiduciary duty were the direct, proximate, and natural cause of Plaintiffs having suffered compensatory damages of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees allowed by contract, all to be satisfied from Bart's personal assets.

## COUNT XI
## NEGLIGENT TRANSFER AND RECEIPT OF PACA TRUST ASSETS
## AGAINST HARRIS BANK

136.   Plaintiffs hereby reallege Paragraphs 1 through 29 as though fully set forth herein.

137.   All assets of Defendant ABL are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

138.   Defendant Harris Bank had actual or constructive knowledge of the statutory trust under PACA, and therefore had a continuing duty to Plaintiffs.

139.   Defendant Harris Bank knew or should have known that Defendant ABL was experiencing severe financial difficulties and was not able to promptly pay

promptly Plaintiffs in full for purchases Produce, which failure to pay promptly is a violation of the PACA.

140.   Defendant Harris Bank carelessly and negligently transferred PACA Trust Assets to its own use at times when it knew, or should have known, that such Assets were held in trust for the benefit of Plaintiffs.

141.   Defendant Harris Bank's receipt and possession of the PACA Trust Assets rightfully belonging to Plaintiffs and other PACA trust beneficiaries was a violation of the PACA.

142.   As a direct and proximate result of Defendant Harris Bank's breach of its duty under the PACA to Plaintiffs, Plaintiffs have suffered compensatory damages of $3,010,837.40, plus pre-judgment interest and costs.

### COUNT XII
### DECLARATORY RELIEF:  PRIORITY TO PACA TRUST ASSETS AGAINST HARRIS BANK

143.   Plaintiffs hereby reallege Paragraphs 1 through 29 and 136 through 142 as though fully set forth herein.

144.   All assets of Defendant ABL are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

145.   Defendant Harris Bank is an alleged secured creditor of Defendant ABL with claims that are inferior and junior to Plaintiffs' priority PACA trust claims.

146.   Defendant ABL and the Individual Defendants pledged, deposited, paid, and/or conveyed PACA Trust Assets to Defendant Harris Bank, and said PACA Trust Assets are in the wrongful custody and control of Defendant Harris Bank.

147.   Assets pledged, deposited and/or conveyed to, secured by, transferred to, or swept by Defendant Harris Bank are assets which are a part of the statutory trust created pursuant to the PACA, and Plaintiffs are perfected beneficiaries to those PACA Trust Assets.

148.   Defendant Harris Bank received these PACA Trust Assets not "for value" and with actual or constructive knowledge of Plaintiffs' PACA trust rights, notwithstanding any security interest Defendant Harris Bank may have been granted in these Assets.

149.   Plaintiffs seek declaratory relief that they have priority above all other creditors, including Harris Bank, to the PACA Trust Assets, and any proceeds derived from these Assets, including all monies deposited with, conveyed to, secured by, paid to, or swept by Harris Bank, and an award of costs.

## COUNT XIII
## BREACH OF TRUST
## AGAINST HARRIS BANK

150.   Plaintiffs hereby reallege Paragraphs 1 through 29 and 136 through 149 though fully set forth herein.

151.   All assets of Defendant ABL are presumptively PACA trust assets, and rightfully belong to Plaintiffs.

152.   Harris Bank had actual or constructive knowledge of the statutory trust under PACA, and therefore has a continuing duty to Plaintiffs not to accept PACA Trust Assets or to assist in the dissipation of PACA Trust Assets.

153.   Harris Bank knew or should have known that Defendant ABL was experiencing severe financial difficulties and was not able to pay promptly Plaintiffs in full for the purchase of the Product, which nonpayment is a violation of the PACA.

154.   Harris Bank, by its own actions, transferred PACA Trust Assets to its own use at times when it knew, or should have known, that such assets were held in trust for the benefit of Plaintiffs.  These actions violated the PACA and were done with knowledge that Defendant ABL was in breach of the PACA trust.  These intentional and/or negligent transfers of PACA Trust Assets were in breach of the PACA trust.

155.   Harris Bank continues to hold any and all PACA Trust Assets having come into its possession as trustee of such Assets for the beneficial interest of Plaintiffs in the PACA trust.

156.   Harris Bank, in breach of its duty under the PACA and the PACA trust, has failed to maintain and to preserve ABL's PACA Trust Assets for the benefit of

Plaintiffs, and has knowingly and/or negligently diverted and/or converted ABL's assets, including the PACA trust *res,* to its own use.

157.   As a result of the foregoing, Plaintiffs have suffered compensatory damages of $3,010,837.40, plus pre-judgment interest, and an award of costs.

## COUNT XIV
## DISGORGEMENT OF PACA TRUST ASSETS
## AGAINST HARRIS BANK

158.   Plaintiffs hereby reallege Paragraphs 1 through 29 and 136 through 157 as though fully set forth herein.

159.   All assets of Defendant ABL are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

160.   Defendant Harris Bank knew or should have known that Defendant ABL was experiencing severe financial difficulties and was not able to pay promptly Plaintiffs in full, which is a violation of PACA.

161.   Defendant Harris Bank, by its own actions, transferred PACA Trust Assets to its own use at times when it knew, or should have known, that such assets were held in trust for the benefit of Plaintiffs.  These actions were violative of the PACA and were done with knowledge that ABL was in breach of the PACA trust.

162.   Defendant Harris Bank's receipt and possession of these PACA Trust Assets rightfully belonging to Plaintiffs was a violation of the PACA and was in breach of the PACA trust.

163.   Harris Bank received PACA Trust Assets subject to Plaintiffs' PACA trust claims not "for value" and with actual or constructive knowledge of Plaintiffs' PACA trust rights, notwithstanding any security interest Harris Bank may have been granted in these assets by ABL.

164.   Harris Bank's receipt of assets impressed with Plaintiffs' PACA trust has caused Plaintiffs to incur compensatory damages.

165.   . As a direct and proximate result of Defendant Harris Bank's wrongful act, Plaintiffs have suffered damages and are entitled to disgorgement of up to $3,010,837.40, plus pre-judgment interest and an award of costs.

## COUNT XV
## NEGLIGENT TRANSFER AND RECEIPT OF PACA TRUST ASSETS AGAINST BB&T

166.   Plaintiffs hereby reallege Paragraphs 1 through 29 as though fully set forth herein.

167.   All assets of Defendant Southern are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

168.   Defendant BB&T had actual or constructive knowledge of the statutory trust under PACA, and therefore had a continuing duty to Plaintiffs to not receive PACA Trust Assets or aid in the dissipation of such Assets by Southern and/or the Individual Defendants.

169.   Defendant BB&T knew or should have known that Defendant Southern was experiencing severe financial difficulties and was not able to pay promptly Plaintiffs in full, which nonpayment is a violation of the PACA.

170.   BB&T carelessly and negligently transferred PACA Trust Assets to its own use at times when it knew, or should have known, that such Assets were held in trust for the benefit of Plaintiffs.

171.   BB&T's receipt and possession of these PACA Trust Assets rightfully belonging to Plaintiffs was a violation of PACA and was in breach of its duty to the Plaintiffs.

172.   As a direct and proximate result of Defendant BB&T's breaches of its duties under the PACA, Plaintiffs have suffered compensatory damages of $3,010,837.40, plus pre-judgment interest and an award of costs.

## COUNT XVI
## DECLARATORY RELIEF:  PRIORITY TO PACA TRUST ASSETS AGAINST BB&T

173.   Plaintiffs hereby reallege Paragraphs 1 through 29 and 166 through 172 as though fully set forth herein.

174.   All assets of Defendant Southern are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

175.   Defendant BB&T is a secured creditor of Defendant Southern with claims that are inferior and junior to the Plaintiffs' priority PACA trust claims.

176.    Southern and the Individual Defendants pledged, deposited, paid, and/or conveyed PACA Trust Assets to BB&T, and said Assets are in the wrongful custody and control of BB&T.

177.    Assets pledged, deposited, paid to, conveyed to, secured by, transferred to, or swept by BB&T are assets which are a part of the PACA statutory trust and Plaintiffs are perfected beneficiaries to all PACA Trust Assets of Southern.

178.    Upon information and belief, Defendant BB&T received these PACA Trust Assets not "for value" and with actual or constructive knowledge of Plaintiffs' PACA trust rights, despite any security interest Defendant BB&T may have been granted in these Assets.

179.    Plaintiffs seek an Order declaring their priority above all other creditors, including BB&T, to these PACA Trust Assets, and in any proceeds derived from these Assets which were deposited with, conveyed to, secured by, paid to, or swept by BB&T, and awarding them costs.

## COUNT XVII
## BREACH OF TRUST
## AGAINST BB&T

180.    Plaintiffs hereby reallege Paragraphs 1 through 29 and 166 through 179 as though fully set forth herein.

181.    All assets of Defendant Southern are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

182.   BB&T had actual or constructive knowledge of the statutory trust under PACA, and therefore has a continuing duty to Plaintiffs to not aid in the dissipation of PACA Trust Assets or receive PACA Trust Assets.

183.   BB&T knew or should have known that Defendant Southern was experiencing severe financial difficulties and was not able to pay promptly Plaintiffs in full, which is a violation of PACA.

184.   BB&T, by its own actions, transferred PACA Trust Assets to its own use at times when it knew, or should have known, that such assets were held in trust for the benefit of Plaintiffs.  These actions were violative of PACA and were done with knowledge that Southern was in breach of the PACA trust.  These intentional and/or negligent transfers of PACA Trust Assets were made in breach of the PACA trust.

185.   BB&T continues to hold any and all PACA Trust Assets having come into its possession as trustee of the PACA trust for the beneficial interest of Plaintiffs.

186.   BB&T, in breach of its duties under the PACA and the PACA trust, has failed to maintain and to preserve Southern's PACA Trust Assets for the benefit of Plaintiffs, and has knowingly and/or negligently diverted and/or converted Southern's assets, including the PACA trust *res,* to its own use.

187.   Because of BB&T's actions, Plaintiffs have suffered compensatory damages of $3,010,837.40, plus pre-judgment interest and an award of costs.

## COUNT XVIII
## DISGORGEMENT OF PACA TRUST ASSETS
## AGAINST BB&T

188.   Plaintiffs hereby reallege Paragraphs 1 through 29 and 166 through 187, as though fully set forth herein.

189.   All assets of Defendant Southern are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

190.   BB&T knew or should have known that Southern was experiencing severe financial difficulties and was not able to pay promptly Plaintiffs in full, which nonpayment is a violation of PACA.

191.   In August 2015, BB&T was on actual notice Southern's impaired financial status. BB&T declared that Southern had defaulted on as its loaned from BB&T.  BB&T sent notices of default on its loan and, pursuant to a related security agreement to customers of Southern, demanded that such customers remit all payments owed to Southern directly to BB&T.

192.   BB&T, by its own actions, transferred PACA Trust Assets to its own use at times when it knew, or should have known, that such Assets were held in trust for the benefit of Plaintiffs.  These actions were violative of PACA and were done with knowledge that Defendant Southern was in breach of the PACA trust.

193.   BB&T's receipt and possession of these PACA Trust Assets rightfully belonging to Plaintiffs was a violation of the PACA and was in breach of the PACA trust.

194.   BB&T received PACA Trust Assets subject to Plaintiffs' PACA trust claims not "for value" and with actual or constructive knowledge of Plaintiffs' PACA trust rights, notwithstanding any security interest BB&T may have been granted in these assets by Southern.

195.   As a direct and proximate result of Defendant BB&T's wrongful act, Plaintiffs have suffered damages and are entitled to disgorgement of all PACA Trust Assets received by BB&T up to $3,010,837.40, plus pre-judgment interest and an award of costs.

## COUNT XIX
### WILLFUL TRANSFER AND RECEIPT OF PACA TRUST ASSETS AGAINST RICHERT, GRS, DANNY, DWIGHT, AND BART

196.   Plaintiffs hereby reallege Paragraphs 1 through 135 as though fully set forth herein.

197.   Richert was a significant lender to the Companies commencing in 2011. Richert factored invoices for the Companies between 2011 and 2015, inclusive.  The factoring invoices for the Companies was structured by Richert, Dwight, and Bart in such a manner so as to grant Richert recourse against ABL for any invoices which were not paid in full by an ABL customer.  The factoring of these invoices was not

a sale, but instead a loan; and the funds which Richert received remained part of the PACA Trust Assets of the Companies.

198.   From the initiation of the lending relationship through the present day, Richert knew that the Companies' financial condition was weak and that ABL and Southern could not pay its Produce creditors in a timely fashion.  The Companies and Richert's representatives Dwight and Bart regularly communicated regarding such financial position and the Companies, through the Individual Defendants, provided Richert, Dwight, and Bart with financial statements and information which contained information that the Companies were not maintaining PACA Trust Assets freely available to pay the Companies' Produce creditors by failing to pay such creditors within the 10-day prompt payment term required by the PACA regulations if there is no written contract for a longer term.  The Companies and Richert, through Dwight and Bart, communicated frequently and regularly concerning efforts to supply the Companies with funds, at times when the Companies had plainly communicated their stressed financial status.  Further, Richert and its representatives were aware of the Companies' weak financial position because Richert, Bart, and Dwight knew that the Companies were not timely paying invoices owed GRS, which company shares a common owner, Dwight, with Richert.

199.   In 2014, Richert, ABL, and Harris Bank entered into an arrangement whereby Harris Bank became the primary lender for ABL.   However, ABL

continued to owe substantial sums to Richert. After Harris Bank became the primary lender to ABL, Richert continued to loan money to ABL. These loans were done in the form of fictitious factoring, whereby Richert would instruct ABL to generate an invoice for a nonexistent sale of Produce and Richert would state the amount which it would lend against such fictitious invoice, with actual knowledge that there was in fact no actual sale. The invoices did not correspond to any actual invoice for sale of product. In order to identify such invoices, Richert, Bart, and Dwight agreed with the Companies that a letter would be added as a suffix to the fictitious invoice numbers. Richert loaned ABL hundreds of thousands of dollars against such fictitious invoices.

200.   All assets of the Companies are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

201.   Richert and its representatives, Dwight and Bart, had actual or constructive knowledge of the statutory trust under the PACA, and therefore owed continuing duties to Plaintiffs, as beneficiaries of the PACA trust.

202.   Richert, Bart, and Dwight knew that the Companies were experiencing severe financial difficulties and were not able to pay promptly Plaintiffs in full for purchases of Produce, which nonpayment is a violation of the PACA.

203.   Richert and GRS willfully transferred PACA Trust Assets to their own use at times when they knew, or should have known, that such Assets were held in trust for the benefit of Plaintiffs.

204.   All or a portion of the PACA Trust Assets of the Companies were paid and transferred by Richert and/or GRS to Dwight and Bart.

205.   The awareness of Richert, GRS, Dwight, and Bart of the precarious financial position of the Companies was such that during 2015, Richert conditioned advances of funds to the Companies upon payment of outstanding sums owed to GRS, which is a non-PACA trust creditor and which transportation company shares common ownership with Richert.

206.   The receipt and possession by Richert, GRS, Dwight, and GRS of these PACA Trust Assets rightfully belonging to Plaintiffs was a violation of the PACA and was in breach of their duties under the PACA to the Plaintiffs.

207.   Dwight and Bart are officers and/or corporate agents of Richert and GRS and accordingly, are individually liable, jointly and severally for the damages caused by Richert and GRS at their express direction.

208.   The transfer or conversion of the PACA Trust Assets by Richert, GRS, Dwight, and Bart was made with the knowledge that Plaintiffs remained unpaid, with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets, and was willful misconduct made with malice, fraud, wantonness, oppression, or an

entire want of care which would raise the presumption of conscious indifference to consequences made.

209.   As a direct and proximate result of the Defendants Richert, GRS, Dwight, and Bart's willful transfer and receipt of PACA Trust Assets, Plaintiffs have suffered compensatory damages the amount of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees, as provided by contract.

210.   As a direct and proximate result of Defendant Richert, GRS, Dwight, and Bart's willful transfer and receipt of PACA Trust Assets, willful misconduct made with malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequences made -- all done with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets – an award of punitive damages against Richert, GRS, Dwight, and Bart is justified and appropriate.

## COUNT XX
## DECLARATORY RELIEF:  PRIORITY TO PACA TRUST ASSETS AGAINST RICHERT AND GRS

211.   Plaintiffs hereby reallege Paragraphs 1 through 135, and 196 through 210 as though fully set forth herein.

212.   All assets of the Companies are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

213.   Richert is a secured creditor or has claimed to be a secured creditor of the Companies with claims that are inferior and junior to the Plaintiffs' priority PACA trust claims.

214.   GRS is an unsecured creditor of the Companies with claims that are inferior and junior to the Plaintiffs' priority PACA trust claims.

215.   The Companies, through the Individual Defendants, pledged, deposited, paid, and/or conveyed PACA Trust Assets to Richert and GRS, and said PACA Trust Assets are in the wrongful custody and control of Richert and GRS.

216.   Assets of the Companies pledged, deposited, paid to, and/or conveyed to, secured by, transferred to, or swept by Richert and GRS are assets which are a part of the PACA trust, and Plaintiffs are perfected beneficiaries of the trust with a priority claim to all PACA Trust Assets of the Companies.

217.   Richert received these PACA Trust Assets not "for value" and with actual or constructive knowledge of Plaintiffs' PACA trust rights, notwithstanding any security interest Richert may have been granted by the Companies in these Assets.

218.   On September 22, 2015, Richert filed a financing statement covering the Companies' accounts receivable and other assets.  Such lien is inferior to the priority rights of the Plaintiffs and the other PACA trusts creditors of the Companies.

219.   Upon information and belief, Defendant GRS received these PACA Trust Assets with actual or constructive knowledge of Plaintiffs' PACA trust rights.

220.   As a result, Plaintiffs have priority above all other creditors to these trust assets, and any proceeds derived from these PACA Trust Assets which were deposited with, conveyed to, secured by, paid to, or swept by Richert and GRS for which Plaintiffs seek declaratory relief.

221.   Plaintiffs seek entry of an Order declaring that, notwithstanding any lien interest claimed by Richert, Plaintiffs have priority above all other creditors to all of the Companies' PACA Trust Assets, and any proceeds derived from these trust assets, regardless of location, and including all property and funds deposited with, conveyed to, paid to, secured by, or swept by Richert; and awarding them costs.

## COUNT XXI
## INTENTIONAL BREACH OF PACA TRUST
## AGAINST RICHERT

222.   Plaintiffs hereby reallege Paragraphs 1 through 135 and 196 through 221 as though fully set forth herein.

223.   All assets of the Companies are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

224.   Richert had actual or constructive knowledge of the PACA statutory trust, and therefore owes duties to Plaintiffs, as beneficiaries of the trust.

225.   Richert knew the Companies were experiencing severe financial difficulties and was not able to pay promptly Plaintiffs in full, which nonpayment is a violation of PACA.

226.   Richert, by its own actions, transferred PACA Trust Assets to its own use at times when it knew that such Assets were held in trust for the benefit of Plaintiffs.  These actions were violative of PACA and were done with knowledge that the Companies were in breach of the PACA trust.  These intentional transfers of PACA Trust Assets were made in breach of the PACA trust.

227.   Richert continues to hold any and all PACA Trust Assets having come into its possession as a co-trustee of the PACA trust for the benefit of Plaintiffs.

228.   Richert, in breach of its duties under the PACA and the PACA trust, failed to maintain and to preserve the Companies' PACA Trust Assets for the benefit of Plaintiffs, and has knowingly diverted and/or converted the Companies' assets, including the PACA trust *res*, to its own use.

229.   Dwight and Bart were, at all material times, and/or are officers and/or corporate agents of Richert and, under the PACA and Georgia law; they are individually liable for the damages caused by Richert at their direction.

230.   The transfer, dissipation, and/or or conversion of the PACA Trust Assets by Richert was done with the knowledge that Plaintiffs remained unpaid, with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets, and was

willful misconduct made with malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences made.

231.   As a direct and proximate result of Richert's willful transfer and receipt of PACA Trust Assets, Plaintiffs have suffered compensatory damages in the amount of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees, as provided by contract.

232.   As a direct and proximate result of Defendant Richert's willful transfer and receipt of PACA trust assets, willful misconduct made with malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequences made -- all done with the intent to harm Plaintiffs by depriving them of the PACA trust assets – an award of punitive damages against Richert is justified and appropriate.

233.   As a result of the foregoing actions by Richert, through the actions of Dwight and Bart, Plaintiffs have suffered compensatory damages of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees, as provided by contract.

## COUNT XXII
## NEGLIGENT BREACH OF PACA TRUST
## AGAINST RICHERT

234.   Plaintiffs hereby reallege Paragraphs 1 through 135 and 196 through 233 as though fully set forth herein.

235.   All assets of the Companies are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

236.   Richert had actual or constructive knowledge of the PACA statutory trust, and therefore owes duties to Plaintiffs, as beneficiaries of the trust.

237.   Richert knew or should have known the Companies were experiencing severe financial difficulties and were not able to pay promptly Plaintiffs in full, which nonpayment is a violation of PACA.

238.   Richert, by its own actions, transferred PACA Trust Assets to its own use at times when it knew or should have known that such Assets were held in trust for the benefit of Plaintiffs.  These actions were violative of PACA and were done with knowledge that the Companies were in breach of the PACA trust.  These transfers of PACA Trust Assets were a negligent breach of the PACA trust.

239.   Richert continues to hold any and all PACA Trust Assets having come into its possession as a co-trustee of the PACA trust for the benefit of Plaintiffs.

240.   Richert, in negligent breach of its duties under the PACA and the PACA trust, failed to maintain and to preserve the Companies' PACA Trust Assets for the benefit of Plaintiffs, and has diverted and/or converted the Companies' assets, including the PACA trust *res*, to its own use.

241.   Dwight and Bart were, at all material times, and/or are officers and/or corporate agents of Richert and, under the PACA and Georgia law; they are individually liable for the damages caused by Richert at their direction.

242.   As a direct and proximate result of Richert's transfer and receipt of PACA Trust Assets, Plaintiffs have suffered compensatory damages the amount of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees, as provided by contract.

243.   As a result of the foregoing actions by Richert, through the actions of Dwight and Bart, Plaintiffs have suffered compensatory damages of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees, as provided by contract.

## COUNT XXIII
## DISGORGEMENT OF PACA TRUST ASSETS
## AGAINST RICHERT

244.   Plaintiffs hereby reallege Paragraphs 1 through 135 and 196 through 243 as though fully set forth herein.

245.   All assets of the Companies are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

246.   Richert knew or should have known that the Companies were experiencing severe financial difficulties and were not able to pay promptly Plaintiffs in full, which nonpayment is a violation of PACA.

247.   Richert, by its own actions, transferred PACA trust assets to its own use at times when it knew, or should have known, that such assets were held in trust for the benefit of Plaintiffs.  These actions were violative of the PACA and were done with knowledge that the Companies were in breach of the PACA trust.

248.   Richert's receipt and possession of these PACA Trust Assets rightfully belonging to Plaintiffs was a violation of the PACA and was in breach of the PACA trust.

249.   Richert received PACA Trust Assets subject to Plaintiffs' PACA trust claims not "for value" and with actual or constructive knowledge of Plaintiffs' PACA trust rights, notwithstanding any security interest Defendant Richert may have been granted in these assets.

250.   Richert's receipt of assets impressed with Plaintiffs' PACA trust *res* has resulted in compensatory damages to Plaintiffs of $3,010,837.40.

251.   As a direct and proximate result of Defendant Richert's wrongful act, Plaintiffs have suffered damages and are entitled to disgorgement of up to $3,010,837.40, plus pre-judgment interest and an award of costs.

### COUNT XXIV
### CONSPIRACY TO BREACH FIDUCIARY DUTIES UNDER PACA AGAINST RICHERT, GRS, DANNY, DWIGHT, BART, ABL, AND SOUTHERN

252.   Plaintiffs hereby reallege Paragraphs 1 through 29 and 196 through 251 as though fully set forth herein.

253.    Richert, Dwight, Bart, Danny, Aaron, the Companies, and GRS (together, the Conspirators") conspired with each other to use the PACA Trust Assets of the Companies to pay Richert and GRS, in support of the tort of breach of fiduciary duty under Georgia common law and Federal PACA law to the detriment of the Plaintiffs and in breach of their fiduciary duties.

254.    On a basis more frequently than weekly, the Conspirators would specifically plan the amount of funds the Companies needed to ensure a supply of the Produce from various venders, including the Plaintiffs, and how to divert funds from the sale of that Produce, which funds constituted PACA Trust Assets, to Richert and GRS.

255.    The Conspirators would pay Richert and GRS proceeds received by the Companies from the sale of produce while the Conspirators were aware the PACA Trust beneficiaries such as the Plaintiffs were not being paid promptly and in full for the Produce supplied, resulting in the dissipation and/or conversion of the PACA Trust Assets of the Companies to the detriment of Plaintiffs.

256.    Richert, through Dwight and Bart, and GRS, through Dwight and Bart, controlled the finances of ABL and Southern, and they exercised such control by withholding funding to ABL and Southern unless and until ABL, Southern, Aaron, and Danny made payments out of PACA Trust Assets to Richert and GRS, as directed by Dwight and Bart.  Such control was manifest by directives of Bart and

Dwight to pay PACA Trust Assets to Richert and the related company, GRS before Richert would advance additional funds to ABL and Southern and on threat of not providing transportation services from GRS.  Richert as a lender to the Companies was on actual and/or constructive notice of the Companies' fiduciary duties under the PACA trust. Richert and GRS, as well as Bart and Dwight, were on notice that the Companies were not paying promptly and in full for the Produce purchased from the Companies creditors. Richert, GRS, Bart, and Dwight knew or were on notice that the Companies were in financial straits and desperate for funding, such that Dwight and Bart, on behalf of GRS and Richert, used their power to cut off, limit, and/or delay funding to cause the Individual Defendants and the Companies to divert and convert PACA Trust Assets by paying same to Richert and GRS.

257.   Each of the Conspirators was aware of the plan to divert and/or convert PACA Trust Assets to Richert and GRS and all Conspirators were aware these orchestrated actions would result in the Plaintiffs and other PACA trust creditors remaining unpaid.

258.   Richert, GRS, Bart, and Dwight conspired with the Companies and Danny to convert and/or divert PACA Trust Assets out of the Companies by having those Assets paid to Richert and GRS to the detriment of Plaintiffs and all other PACA trust creditors of the Companies.

259.   The Individual Defendants, Dwight, and Bart are, or were at all material times, officers and/or corporate agents of Richert and GRS, respectively, and under Georgia law are individually liable, jointly and severally, for the damages caused by the Companies, Richert, and GRS at their direction.

260.   As a direct, natural, and proximate result of the Conspirators' actions to breach their fiduciary duties owed to Plaintiffs as PACA trust creditors and their misconduct; Plaintiffs have been damaged in the sum of $3,010,837.40, plus pre-judgment interest, costs and attorney's fees, as provided by contract.

261.   The transfer, dissipation, and/or or conversion of the PACA Trust Assets by Richert, was done with the knowledge that Plaintiffs remained unpaid, with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets, and was willful misconduct made with malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences made.

262.   As a direct and proximate result of the Conspirators' willful transfer and receipt of PACA Trust Assets, willful misconduct made with malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequences made -- all done with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets – an award of punitive damages against the Conspirators is justified and appropriate.

## COUNT XXV
## CO-FIDUCIARY LIABILITY UNDER PACA
## AGAINST RICHERT, GRS, DWIGHT, AND BART

263.   Plaintiffs hereby reallege Paragraphs 1 through 135 and 196 through 262, as though fully set forth herein.

264.   The intimate, repeated, and powerful control exercised by Richert, GRS, Bart, and Dwight, of and over the disbursement, conversion, and dissipation of PACA Trust Assets of ABL and Southern was such that Richert was a de facto "controlling person" of the Companies' PACA Trust Assets, and therefore, a co-fiduciary of such assets along with Aaron, Danny, and the Companies.  Dwight and Bart essentially functioned as the controlling management of the Companies in conjunction with Danny as a co-manager. Such co-fiduciary status under the PACA trust makes Richert, GRS, Bart, and Dwight jointly and severally liable to Plaintiffs and all other PACA trust creditors for the dissipation and/or conversion of the Companies' PACA Trust Assets.

265.   As a direct, natural, and proximate result of the actions of Dwight, Bart, Richert, and GRS, as controlling persons and co-trustees of the PACA Trust Assets of the Companies, Plaintiffs have been damaged in the sum of $3,010,837.40, plus pre-judgment interest, costs and attorney's fees, as provided by contract.

266.   The transfer, dissipation, and/or or conversion of the PACA Trust Assets controlled by Richert, GRS, Dwight, and Bart was done with the knowledge

that Plaintiffs remained unpaid, with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets, and was willful misconduct made with malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences made.

267.   As a direct and proximate result of these Defendants' willful misconduct made with malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequences made -- all done with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets – an award of punitive damages against these Defendants is justified and appropriate.

## COUNT XXVI
## NEGLIGENT BREACH OF TRUST
## AGAINST GRS

268.   Plaintiffs hereby reallege Paragraphs 1 through 135 and 196 through 267 as though fully set forth herein.

269.   All assets of the Companies are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

270.   GRS had actual or constructive knowledge of the statutory trust under PACA, and therefore has a continuing duty to Plaintiffs.

271.   GRS knew or should have known that the Companies were experiencing severe financial difficulties and were not able to pay promptly Plaintiffs in full, which is a violation of PACA.

272.   GRS, by its own actions, transferred PACA trust assets to its own use at times when it knew, or should have known, that such assets were held in trust for the benefit of Plaintiffs.  These actions were in violation of PACA and were done with knowledge that the Companies were in breach of the PACA trust.  These negligent transfers of PACA Trust Assets were made in breach of the PACA trust.

273.   GRS continues to hold any and all PACA Trust Assets having come into its possession as trustee for the Plaintiffs and all PACA trust creditors, as beneficiaries of the PACA trust.

274.   GRS, in breach of its duties under the PACA and the PACA trust, has failed to maintain and to preserve the Companies' PACA Trust Assets for the benefit of Plaintiffs, and has negligently diverted and/or converted the Companies' assets, including the PACA trust *res,* to its own use.

275.   Dwight and Bart are, or were at all material times, officers and/or corporate agents of GRS and, under Georgia law, are individually liable for the damages caused by GRS at their direction.

276.    As a result of the foregoing actions by GRS, at the direction of Dwight and Bart, Plaintiffs have suffered compensatory damages of $3,010,837.40, plus pre-judgment interest, costs, and attorneys' fees, provided by contract.

**COUNT XXVII**
**DISGORGEMENT OF PACA TRUST ASSETS**
**AGAINST GRS**

277.    Plaintiffs hereby reallege Paragraphs 1 through 135 and 196 through 276 as though fully set forth herein.

278.    All assets of the Companies are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

279.    Defendant GRS knew or should have known that the Companies were experiencing severe financial difficulties and was not able to pay promptly Plaintiffs in full, which is a violation of PACA.  Dwight's knowledge of the financial condition of the Companies is imputed to GRS as Dwight is the sole shareholder of GRS.

280.    Defendant GRS, by its own actions, transferred PACA Trust Assets to its own use at times when it knew, or should have known, that such Assets were held in trust for the benefit of Plaintiffs.  These actions were in violation of PACA and were done with knowledge that the Companies were in breach of the PACA trust.

281.    Defendant GRS' receipt and possession of these PACA Trust Assets rightfully belonging to Plaintiffs was in breach of the PACA trust.

282.   Defendant GRS received PACA Trust Assets subject to Plaintiffs' PACA trust claims with actual or constructive knowledge of Plaintiffs' PACA trust rights.

283.   Defendant GRS' receipt of assets impressed with Plaintiffs' PACA trust *res* has resulted in compensatory damages to Plaintiffs in an amount up to $3,010,837.40, plus interest, costs, and contractual attorney's fees, less any PACA Trust Assets that Plaintiffs recover directly from the Companies.

284.    As a direct and proximate result of Defendant GRS's wrongful act, Plaintiffs have suffered damages and are entitled to disgorgement of up to $3,010,837.40, plus pre-judgment interest and an award of costs.

## COUNT XXVIII
## DISGORGEMENT OF PACA TRUST ASSETS
## AGAINST SIX L'S AND CUSTOM PAK

285.   Plaintiffs hereby reallege Paragraphs 1 through 29 as though fully set forth herein.

286.   Danny, through ABL, had a substantial customer base through his dealings with various distribution centers of a prominent customer, Wal-Mart, as well as with other buyers.  This business generated tens of millions of dollars in annual sales for ABL.  Custom Pak had been for a period of several years and continues to be interested in acquiring the additional Wal-Mart business of ABL as well as accounts controlled by ABL and Danny.  So strong was Custom Pak's desire

to acquire ABL's and Danny's customer base that Custom Pak took the extraordinary step for a produce supplier to arrange for Six L's, a company with common ownership, to become a financier and lender of ABL's operations in a series of lending agreements. Custom Pak's desire to obtain these accounts was such that Custom Pak continued to negotiate with Danny to deliver such business to Custom Pak after ABL and Southern had effectively ceased operations in 2015, at a time when there were millions of dollars of produce invoices remaining unpaid to Plaintiffs and other Produce suppliers.

287.   As part of Custom Pak's efforts to eventually acquire the additional accounts developed by Danny, Custom Pak and Six L's entered into two types of lending arrangements with ABL during the years 2012 through 2015.

288.   In 2012, ABL, Custom Pak, and Six L's entered into an agreement with ABL (Exhibit A) whereby Six L's would loan $220,000 to ABL. ABL was required by the contract to supply no less than five commercial loads a week to Custom Pak. Once Custom Pak was paid for those loads by the customer, Custom Pak would provide $5,000 per load to Six L's as payment for the loan and Custom Pak would then pay the remaining balance to ABL. The contract specifically required Custom Pak to withhold funds otherwise due to ABL and to pay them to Six L's as payment for the loan.

289.   In 2014, ABL, Custom Pak, and Six L's entered into an agreement with ABL (Exhibit B) whereby Six L's would loan $100,000 to ABL.  ABL was required by the contract to supply no less than five commercial loads a week to Custom Pak. Once Custom Pak was paid for those loads by the customer, Custom Pak would provide $5,000 per load to Six L's as payment for the loan and Custom Pak would then pay the remaining balance to ABL.  The contract specifically required Custom Pak to withhold funds otherwise due to ABL and to pay them to Six L's as payment for the loan.

290.   In June 2015, Six L's, Custom Pak and ABL entered into an agreement (Exhibit C) whereby Six L's and ABL agreed to buy between one and twenty commercial loads of watermelons from ABL per week to customers of Six L's and Custom Pak.   Additionally, under this agreement, Custom Pak would loan or advance ABL a portion of the funds due on the its own customers invoices so ABL would have immediate access to the funds due from ABL's customer at the cost of $0.01 to $0.02 per pound of watermelons on the invoice.  These fees were paid to Custom Pak and Six L's directly from collections and prior to any payment to ABL. As part of this lending arrangement, Custom Pak would demand that purchasers of factored sales pay Custom Pak directly for product actually sold by ABL.  Custom Pak did not put buyer and seller together as is done in a traditional brokerage agreement.  ABL already possessed the customer and the order from that customer.

So, there was no need for Custom Pak to provide the services of a broker, such as are described in the relevant PACA regulation, 7 C.F.R. 46.2(n), that defines the role of a true broker.  There was also no need for Custom Pak to provide "billing agent" services for ABL for these same reasons.  Custom Pak's "brokerage" of existing supplier/customer relationships between ABL and its buyers was a disguised form of a factoring arrangement.  The contract between Six L's, ABL and Custom Pak was labeled as a brokerage agreement in an attempt to avoid the label and legal consequences of Custom Pak and Six L's being deemed a lender to ABL.  Custom Pak and Six L's' principals have decades of experience in the produce industry and well know the dangers under the PACA trust for a lender to a PACA licensee when that licensee is not paying its PACA trust creditors in a timely fashion.

291.   On the same date in June 2015, Six L's and the Companies entered into an agreement (Exhibit D) whereby Six L's would loan the Companies $200,000. Payment for this loan was to be made directly from the Companies.  Entering into the watermelon purchasing and factoring agreement listed above (Exhibit C) was a condition of the loan.  This loan was to be repaid by means of a series of post-dated checks each in the amount of $20,000.  Pursuant to such loan agreement, ABL paid $160,000 on the loans between June and August 2015.

292.   Custom Pak and Six L's, as a PACA licensees, were at all times on constructive and actual notice of the PACA trust, including knowledge that all assets

of ABL are subject to the PACA trust, including accounts receivable of customers to whom ABL sold Produce.  Custom Pak and Six L's were aware of ABL's financial difficulties; in fact, ABL at times was unable to pay Custom Pak for produce in a prompt fashion as required by the PACA.

293.   Custom Pak and Six L's were on notice that ABL was not maintaining PACA Trust Assets freely available to pay its suppliers; in fact, the lending arrangements between Custom Pak and Six L's on the one hand and ABL on the other was entered into specifically to address ABL's lack of ability to pay its Produce suppliers in a timely fashion.

294.   Custom Pak and Six L's received PACA Trust Assets of ABL while it knew or should have known that ABL was not maintaining PACA Trust Assets freely available to ABL's PACA trust creditors, including Plaintiffs. Custom Pak and Six L's are subject to disgorgement of such assets to the Plaintiffs.

295.   As a direct and proximate result of Defendants Six L's and Custom Pak's wrongful act, Plaintiffs have suffered damages and are entitled to disgorgement of a principal amount up to $400,000.00, plus pre-judgment interest and an award of costs.

## COUNT XXIX
## CONSPIRACY TO INTENTIONALLY BREACH
## FIDUCIARY DUTIES UNDER PACA
## AGAINST CUSTOM PAK, SIX L'S, DANNY, AND ABL

296.   Plaintiffs hereby reallege Paragraphs 1 through 87, 196 through 210, 252 through 262, and 285 through 297 as though fully set forth herein.

297.   Custom Pak, Six L's, Danny, and ABL (together, the "Conspirators") conspired with each other to use the PACA Trust Assets of the Companies to pay Custom Pak and Six L's on the loans and disguised factoring arrangements devised by the Conspirators to enrich themselves to the detriment of the PACA trust creditors. In so acting, they agreed to violate ABL's fiduciary duties to the PACA trust creditors, including the Plaintiffs.

298.   Each of the Conspirators were aware of the plan to divert and/or convert PACA Trust Assets to Six L's and Custom Pak and all Conspirators were aware these orchestrated actions would result in the Plaintiffs and other PACA trust creditors remaining unpaid.

299.    Danny is, or was at all material times, an officer, director, owner, and/or corporate agent of ABL, and under Georgia law, he is individually liable, jointly and severally, for the damages caused by ABL at his direction.

300.  As a direct, natural, and proximate result of the Conspirators' agreement to breach the fiduciary duties owed to Plaintiffs as PACA trust creditors,

the Plaintiffs have been damaged in the sum up to $400,000.00, plus pre-judgment interest, costs and attorney's fees, as provided by contract.

301.   The transfer, dissipation, and/or or conversion of the PACA Trust Assets by Custom Pak, Six L's, Danny, and ABL, was done with the knowledge that Plaintiffs remained unpaid, with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets, and was willful misconduct made with malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences made.

302.   As a direct and proximate result of the Conspirators' willful transfer and receipt of PACA Trust Assets, willful misconduct made with malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequences made -- all done with the intent to harm Plaintiffs by depriving them of the PACA Trust Assets – an award of punitive damages against each of the Conspirators is justified and appropriate.

**COUNT XXX**
**DECLARATORY JUDGMENT**
**BY PLAINTIFF HAPCO AND PURA VIDA**
**AGAINST CUSTOM PAK**

303.   Plaintiffs hereby reallege Paragraphs 1 through 29 and 287 and 302 as though fully set forth herein.

304.   As part of its disguised factoring/lending scheme with ABL, Custom Pak is making demands upon ABL customers, including Plaintiff Hapco and Pura

Vida, that these purchasers not pay ABL and instead make payment to Custom Pak pursuant to the lending arrangement between ABL and Custom Pak. Custom Pak is aware that all product supplied by ABL to Hapco and Pura Vida were provided based on orders placed to ABL by Hapco and Pura Vida, not by Custom Pak. Meanwhile, ABL has made demand on Hapco and Pura Vida for payment of some of these same invoices.

305.   Custom Pak's attempts to collect ABL's orders from Hapco and Pura Vida is an attempt by Custom Pak to assume dominion over ABL's PACA Trust Assets which ABL is required to hold on behalf of its PACA trust creditors.

306.   An actual controversy has arisen and now exists relating to the rights and duties of Hapco, Pura Vida and Custom Pak wherein Hapco and Pura Vida contend the PACA trust requires it to pay sums owed on Produce orders made by ABL to ABL in the form of offsets to Hapco's and Pura Vida's claims against ABL and not to Custom Pak. Custom Pak is demanding that Hapco and Pura Vida pay said sums to Custom Pak.

307.   Hapco, Pura Vida, and Plaintiffs seek an Order of this Court declaring that all payments for Produce supplied to ABL by Hapco and Pura Vida are properly credited to the account of ABL and not to Custom Pak, and an award of costs.

**COUNT XXXI**
**DECLARATORY JUDGMENT: PRIORITY OF PACA TRUST CLAIMS AGAINST ALL DEFENDANTS**

308.   Plaintiffs hereby reallege Paragraphs 1 through 307 and 313 through 341 as though fully set forth herein.

309.   PACA trust claims are superior to and have priority as against any and all claims which Defendants might assert to the accounts receivable, inventory and proceeds of Defendants, to the extent such receivables, inventory and proceeds constitute the corpus of the PACA Trust Assets to which Plaintiffs are beneficiaries.

310.   Plaintiffs seek an Order of this Court declaring that their PACA trust claims are superior to and have priority as against any and all claims which Defendants might assert to the PACA Trust Assets.

311.   Any perfected security interest which Harris Bank, Richert, and/or BB&T, might have in ABL's or Southern's accounts receivable, in the inventory or proceeds, or in any other PACA Trust Assets is secondary and specifically avoidable, as a matter of law, to satisfy payments to PACA trust beneficiaries, including Plaintiffs.

312.   Plaintiffs seek a declaratory order and judgment establishing: (1) that the PACA Trust Assets never became property of Defendants or the estate of Defendants under 11 U.S.C. §541; (2) Plaintiffs' trust claims under the PACA trust are superior to and take priority over any and all of Defendants' secured and

unsecured claims, if any, to Defendants' accounts receivable, inventory and the

proceeds thereof, and any other PACA Trust Assets; and (3) only funds in excess of

the PACA Trust Assets necessary to pay the PACA trust claimants are property of

Defendants or the estate of Defendants, and/or possibly subject to a third party's

liens or claims, if such are established. 7 U.S.C. § 499(b)(4); 7 C.F.R. § 46.33

**COUNT XXXII**
**CONSTRUCTIVE TRUST AGAINST REAL PROPERTY**
**AGAINST PRIVATE KEY**

313.   Plaintiffs incorporate by reference the allegations in Paragraphs 1

through 29 as though set forth fully herein.

314.   Danny owns and controls Private.

315.   Private is or was the owner of real property.

316.   Using PACA Trust Assets of the Companies, Private acquired real

property, including but not limited to real property with the following legal

description:

> A parcel of land located in the State of GA County of Fulton, with a situs
> address of 675 Seminole Ave NE 103, Atlanta GA 30307-3411 C021
> currently owned by Private Key Ventures LLC having a tax assessor number
> of 14-0016-0013-102 and being the same property more fully described as L-
> 103 then and described in document number 53914-341 dated 06/09/2014 and
> recorded 06/19/2014.  Subdivision: Highland Bldg Condos, APN 14-016-
> 0013-102.

317.   Private's real property was acquired by Danny using PACA Trust Assets of the Companies that were transferred, dissipated, and/or converted to Private by Danny.

318.   Private, through its control and ownership by Danny, is and always has been on notice that the Companies' PACA Trust Assets were encumbered by the PACA trust.

319.   Plaintiffs are entitled to the imposition of a constructive trust on all interests in or proceeds from the sale of Private property because the interests and/or proceeds are part of the PACA Trust Assets for the benefit of the PACA trust creditors of the Companies, including Plaintiffs.

## COUNT XXXIII
## NEGLIGENT TRANSFER AND RECEIPT OF PACA TRUST ASSETS AGAINST SIX L's

320.   Plaintiffs hereby reallege Paragraphs 1 through 29 and 287 through 302 as though fully set forth herein.

321.   All assets of Defendants Southern and ABL are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

322.   As a PACA Licensee, Defendant Six L's had actual or constructive knowledge of the statutory trust under PACA, and therefore had a continuing duty to Plaintiffs to not receive PACA Trust Assets or aid in the dissipation of such Assets by the Companies and/or the Individual Defendants.

323.   Defendant Six L's knew or should have known that the Companies were experiencing severe financial difficulties and were not able to pay promptly Plaintiffs in full, which nonpayment is a violation of the PACA.

324.   Six L's carelessly and negligently transferred PACA Trust Assets to itself or to Custom Pak at times when it knew, or should have known, that such Assets were held in trust for the benefit of Plaintiffs.

325.   Six L's receipt and possession of these PACA Trust Assets rightfully belonging to Plaintiffs was a violation of PACA and was in breach of its duty to the Plaintiffs.

326.   As a direct and proximate result of Six L's' breaches of its duties under the PACA, Plaintiffs have suffered compensatory damages in the principal amount up to $400,000.00, plus pre-judgment interest and an award of costs.

## COUNT XXXIV
## DECLARATORY RELIEF:  PRIORITY TO PACA TRUST ASSETS
## AGAINST SIX L's

327.   Plaintiffs hereby reallege Paragraphs 1 through 29, 285 through 302 and 320 through 326 as though fully set forth herein.

328.   All assets of the Companies are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

329.   Six L's is a creditor of the Companies with claims that are inferior and junior to the Plaintiffs' priority PACA trust claims.

330.   The Companies and the Individual Defendants pledged, deposited, paid, and/or conveyed PACA Trust Assets to Six L's, and said Assets are in the wrongful custody and control of Six L's.

331.   Assets pledged, deposited, paid to, conveyed to, secured by, transferred to, or swept by Six L's are assets which are a part of the PACA statutory trust and Plaintiffs are perfected beneficiaries to all PACA Trust Assets of the Companies.

332.   Upon information and belief, Six L's received these PACA Trust Assets not "for value" and with actual or constructive knowledge of Plaintiffs' PACA trust rights, despite any interest Six L's may have been granted in these Assets.

333.   Plaintiffs seek an Order declaring their priority above all other creditors, including Six L's, to these PACA Trust Assets, and in any proceeds derived from these Assets which were deposited with, conveyed to, secured by, paid to, or swept by Six L's, and awarding them costs.

**COUNT XXXV**
**BREACH OF TRUST**
**AGAINST SIX L's**

334.   Plaintiffs hereby reallege Paragraphs 1 through 29, 286 through 302 and 320 through 335 as though fully set forth herein.

335.   All assets of the Companies are presumptively PACA Trust Assets, and rightfully belong to Plaintiffs.

336.   Six L's had actual or constructive knowledge of the statutory trust under PACA, and therefore has a continuing duty to Plaintiffs to not aid in the dissipation of PACA Trust Assets or receive PACA Trust Assets.

337.   Six L's knew or should have known that the Companies were experiencing severe financial difficulties and were not able to pay promptly Plaintiffs in full, which is a violation of PACA.

338.   Six L's, by its own actions, transferred PACA Trust Assets to itself or to Custom Pak at times when it knew, or should have known, that such assets were held in trust for the benefit of Plaintiffs.  These actions were violative of PACA and were done with knowledge that the Companies were in breach of the PACA trust.  These intentional and/or negligent transfers of PACA Trust Assets were made in breach of the PACA trust.

339.   Six L's continues to hold any and all PACA Trust Assets having come into its possession as trustee of the PACA trust for the beneficial interest of Plaintiffs.

340.   Six L's, in breach of its duties under the PACA and the PACA trust, has failed to maintain and to preserve the Companies' PACA Trust Assets for the benefit of Plaintiffs, and has knowingly and/or negligently diverted and/or converted the Companies' assets, including the PACA trust *res,* to its own use.

341.   Because of Six L's' actions, Plaintiffs have suffered compensatory damages in the principal amount up to $400,000.00, plus pre-judgment interest and an award of costs.

   **WHEREFORE**, Plaintiffs respectfully seek the entry of an Order and Judgment in their favor and against the Defendants as follows:

A.       As to Count I, declaring that Plaintiffs are beneficiaries of the PACA Trust Assets, and entering a Judgment holding Defendants ABL, Southern, Richert, Danny, Aaron, Dwight, and Bart, liable, jointly and severally, for Plaintiffs' compensatory damages of $3,010,837.40, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, an award of costs, and an award of attorneys' fees, as allowed by contract;

B.       As to Count II, entering an Order and Judgment directing ABL and Southern to immediately pay Plaintiffs $3,010,837.40 in compensatory damages, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, an award of costs, and an award of attorneys' fees, as allowed by contract;

C.       As to Count III, entering an Order and Judgment directing ABL and Southern to immediately pay Plaintiffs $3,010,837.40 in compensatory damages, plus pre-judgment interest from the date each invoice became past due at the legal

rate or any contract rate, an award of costs, and an award of attorneys' fees, as allowed by contract;

D.      As to Count IV, entering Judgment in favor of Plaintiffs and against Aaron for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, an award of costs, and an award of attorneys' fees, as allowed by contract;

E.      As to Count V, entering Judgment in favor of Plaintiffs and against Danny for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, an award of costs, and an award of attorneys' fees as, allowed by contract; and also awarding punitive damages;

F.      As to Count VI, entering Judgment in favor of Plaintiffs and against Danny for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, an award of costs, and an award of attorneys' fees, as allowed by contract;

G.      As to Count VII, entering Judgment in favor of Plaintiffs and against Dwight for Plaintiffs' compensatory damages of $3,010,837.40, less any monies

Plaintiffs receive from the Companies, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, an award of costs, an award of attorneys' fees, as allowed by contract; and also awarding punitive damages;

H.      As to Count VIII, entering Judgment in favor of Plaintiffs and against Dwight for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, an award of costs, and an award of attorneys' fees, as allowed by contract;

I.      As to Count IX, entering Judgment in favor of Plaintiffs and against Bart for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, an award of costs, an award of attorneys' fees, as allowed by contract; and also awarding punitive damages;

J.      As to Count X, entering Judgment in favor of Plaintiffs and against Bart for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, an award of costs, and an award of attorneys' fees, as allowed by contract;

K.      As to Counts XI through XIV, entering an Order and a Judgment in favor of Plaintiffs and against Harris Bank as follows: (1) declaring all liens, security agreements, and secured interests and rights of Harris Bank in and to the PACA Trust Assets of ABL (including demand deposit accounts at Harris Bank) are subordinate and inferior to the rights of Plaintiffs' PACA trust claims; (2) ordering all sums in ABL's demand deposit accounts be turned over to Plaintiffs in an amount up to Plaintiffs' damages of $3,010,837.40, (3)  declaring that the assets pledged, deposited, conveyed to, paid to, secured to, transferred to, or swept by Harris Bank from ABL are priority PACA Trust Assets and that Harris Bank's rights are subordinate and inferior to the priority and superior rights of the claims of Plaintiffs for an amount up to $3,010,837.40; (4) requiring Harris Bank to immediately account for and disgorge all PACA Trust Assets to Plaintiffs in an amount up to $3,010,837.40; and (5) awarding costs and pre-judgment interest to Plaintiffs.

L.      As to Counts XV through XVIII, entering an Order and a Judgment in favor of Plaintiffs and against BB&T as follows: (1) declaring all liens, security agreements, and secured interests and rights of BB&T in and to the PACA Trust Assets of Southern (including demand deposit accounts at BB&T are subordinate and inferior to the rights of Plaintiffs' PACA trust claims; (2) order all sums in Southern's demand deposit accounts be turned over to Plaintiffs in an amount up to Plaintiffs' damages of $3,010,837.40, (3) declaring that the assets pledged,

deposited, conveyed to, paid to, secured to, transferred to, or swept by Defendant BB&T from Southern are priority PACA Trust Assets and that BB&T's rights are subordinate and inferior to the priority and superior rights of the claims of Plaintiffs for an amount up to $3,010,837.40; (4) requiring BB&T to immediately account for and disgorge all PACA Trust Assets to Plaintiffs in an amount up to $3,010,837.40; and (5) awarding costs and pre-judgment interest to Plaintiffs.

M.      As to Count XIX, entering Judgment in favor of Plaintiffs and against Richert, GRS, Aaron, Danny, Dwight, and Bart, jointly and severally, for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs received from the Companies, plus pre-judgment interest, an award of costs, and also awarding punitive damages;

N.      As to Count XX, entering an Order and Judgment declaring all liens, security agreements, and secured interests and rights of Richert and GRS in and to the PACA Trust Assets of ABL and Southern are subordinate and inferior to the priority and superior rights of Plaintiffs' PACA trust claims; and awarding costs to Plaintiffs;

O.      As to Count XXI, entering Judgment in favor of Plaintiffs and against Richert for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest, an award of costs, and also, an award of punitive damages;

P.      As to Count XXII, entering Judgment in favor of Plaintiffs and against Richert for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest and an award of costs;

Q.      As to Count XXIII, entering an Order and Judgment in favor of Plaintiffs and against Richert and requiring Richert to immediately account for and disgorge all PACA Trust Assets to Plaintiffs in an amount up to $3,010,837.40; and awarding costs and pre-judgment interest;

R.      As to Count XXIV, entering Judgment in favor of Plaintiffs and against Richert, GRS, Aaron, Danny, Dwight, Bart, ABL, and Southern, jointly and severally, for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate; an award of costs; an award of attorneys' fees, as allowed by contract; and also awarding punitive damages;

S.      As to Count XXV, entering a Judgment: (1) declaring Defendants Richert, GRS, Dwight, and Bart to be co-fiduciaries and co-trustees of the PACA Trust Assets of the Companies and finding them jointly and severally liable to Plaintiffs for the unpaid PACA Trust Assets claimed as owed from sales of the Produce to ABL and Southern, (2) entering Judgment in favor of Plaintiffs and

against Richert, GRS, Aaron, Danny, Dwight, Bart, ABL, and Southern, jointly and severally, for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, (3) awarding pre-judgment interest from the date each invoice became past due at the legal rate or any contract rate, (4) awarding costs, (5) awarding attorneys' fees, as allowed by contract; and (6) awarding punitive damages;

T.      As to Counts XXVI and XXVII, entering Judgment in favor of Plaintiffs and against GRS, as follows: (1) declaring the rights of GRS inferior and subordinate to the superior and priority rights of Plaintiffs' PACA trust claims; (2) requiring Richert to immediately account for and disgorge all PACA Trust Assets to Plaintiffs in an amount up to $3,010,837.40; and (3) entering Judgment in favor of Plaintiffs and against GRS for Plaintiffs' compensatory damages of $3,010,837.40, less any monies Plaintiffs receive from the Companies, and (4) awarding pre-judgment interest and costs;

U.      As to Count XXVIII, entering an Order and Judgment requiring Custom Pak and Six L's to account for, disgorge, and transfer any and all PACA Trust Assets that came into its possession and control to Plaintiffs in the principal amount up to $400,000, less any monies Plaintiffs receive from Defendant ABL; and awarding pre-judgment interest and costs;

V.      As to Count XXIX, entering Judgment in favor of Plaintiffs and against Custom Pak, Six L's Danny and ABL for Plaintiffs' compensatory damages in the principal up to $400,000 or whatever lesser amount in PACA Trust Assets were received by Custom Pak, less any monies Plaintiffs receive from the Companies, plus pre-judgment interest, an award of costs, and an award of punitive damages;

W.      As to Count XXX, entering a Judgment declaring Hapco a creditor of ABL and declaring that all payments for Produce supplied to ABL by Hapco are properly credited to the account of ABL and not to Custom Pak; and awarding costs;

X.      As to Count XXXI, entering a declaratory judgment establishing that: (1) the PACA trust Assets never became the property of Defendants; (2)  Plaintiffs' trust claims under the PACA are superior to and take priority over the Defendants' secured and unsecured claims, if any, to the PACA Trust Assets, including Produce-related accounts receivable, inventory and proceeds; (3) only funds in excess of the trust funds necessary to pay the Plaintiffs are property of Defendants; and for enforcement of the trust provisions of the PACA through payment to Plaintiffs of their compensatory damages of $3,010,837.40, plus (4) awarding pre-judgment interest at the legal or contract rate, costs, and attorneys' fees, as allowed by contract;

Y.      As to Count XXXII, entering an Order and Judgment imposing a constructive trust on all interests of Private Key in the subject real property and as to any other property, real or personal, which was acquired in whole or in part with

PACA Trust Assets, ordering all such property sold, directing that all proceeds of the sale be deposited in the Court Registry for distribution to Plaintiffs; and awarding costs; and

Z.      As to Counts XXXIII through XXXV, entering an Order and a Judgment in favor of Plaintiffs and against Six L's as follows: (1) declaring all liens, security agreements, and secured or unsecured interests, and rights of Six L's in and to the PACA Trust Assets of the Companies are subordinate and inferior to the rights of Plaintiffs' PACA trust claims; and (2) declaring that the assets pledged, conveyed to, paid to, secured to, transferred to, Six L's from the Companies are priority PACA Trust Assets and that Six L's' rights are subordinate and inferior to the priority and superior rights of the claims of Plaintiffs for a principal amount  up to $400,000, plus costs fees and interest.

AA.     As to all counts, granting such other and further relief as the Court deems just, proper, equitable, and appropriate upon consideration of this matter.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues triable as a matter of right to the greatest extent allowed by law.

Respectfully submitted on this the 3rd day of October, 2017.

STOKES LAW OFFICE LLP

*/s/* Craig A. Stokes_____
Craig A. Stokes – SBN 774978
3330 Oakwell Court, Suite 225
San Antonio, TX 78218
Telephone (210) 804-0011
E-Mail: cstokes@stokeslawoffice.com
*Attorneys for Plaintiffs Evergreen Farms & Produce, LLC, Hendrix Produce, Inc.,*
*Coast to Coast Produce, LLC, Delightful Quality Produce Company, LLC, Delfino*
*Marketing, Inc., Fresh-Pro, Inc., Hapco Farms, LLC, Jim Rash, Inc., Ward*
*Thomas d/b/a Majestic Produce Sales Co., Sandia Depot, Inc., William Manis*
*Produce Marketing (a d/b/a of William Manis Company)*

**HENKEL & COHEN, P.A.**                    **LANGDALE VALLOTTON, LLP**

/s/ Tim D. Henkel_____      /s/ Robert A. Plumb, Jr._____
Timothy D. Henkel – *Pro Hac Vice*       Robert A. Plumb, Jr.
Florida State Bar No. 0817813            Georgia State Bar No. 582273
18001 Old Cutler Road, Suite 600         1007 North Patterson Street
Miami, Florida 33157                     Valdosta, Georgia 31601
Telephone (305) 971-9474                 Telephone (229) 244-5400
Email:tdh@miamibusinesslitigators.com   Email: rplumb@langdalelaw.com
*Attorneys for Intervening Plaintiff, New Era Produce, L.L.C.*

**MARTYN AND ASSOCIATES**

/s/ Mark A. Amendola_____
Mark A. Amendola – *Pro Hac Vice*
Ohio State Bar No. 0042645
820 W. Superior Avenue, Tenth Floor
Cleveland, Ohio  44113
Telephone (216) 861-4700
E-Mail: mamendola@martynlawfirm.com
*Attorneys for Intervenor-Plaintiffs Williams Farms, LLC, C.H. Robinson*
*Worldwide, Inc., and Dean Tucker Farms Produce, Inc.*

**RYNN & JANOWSKY, LLP**          **MOULTON & MASSEY**

/s/ June Monroe_____          */s/* Jeremy A. Moulton_____
June Monroe – Pro Hac Vice          Jeremy A. Moulton
California State Bar No. 284763          Georgia State Bar No. 527398
4100 Newport Place Drive, Suite 700          925 Railroad Street
Newport Beach, CA  92660          Conyers, GA 30012
Telephone (949) 752-2911          Telephone (770) 483-4406
E-Mail: june@rjlaw.com          Email: jeremy@moultonfirm.com
*Attorneys for Intervening Plaintiff Pura Vida Farms, LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this pleading has been prepared in compliance with Northern District of Georgia Local Rule 5.1B.  This pleading has been prepared in Times New Roman 14-point font.

/s/ Craig A. Stokes_____
Craig A. Stokes

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served electronically to all parties on the above captioned matter at the electronic address as disclosed with the Court, or by depositing same in the U.S. Mail, postage prepaid and properly addressed on October 3, 2017.

*/s/* Craig A. Stokes_____
Craig A. Stokes